

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-06-183-CR

CHAD AVERY FOWLER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

The question in this DWI case is whether a police officer has probable cause or reasonable suspicion for a traffic stop when the officer observes the the tires of the defendant's vehicle cross into an adjacent same-direction lane by a tire's width a single time when there is no other traffic in the area. We answer "no" and reverse the trial court's judgment.

## Background

On July 23, 2005, a little after midnight, Officer Patrick Knotts of the Mansfield Police Department was driving directly behind Appellant's pick-up truck on Debbie Lane, a four-lane road divided by a median. Officer Knotts testified that he observed the truck cross into an adjacent same-direction lane by a tire's width and that the truck drifted within its lane two more times, touching the white line between the lanes.

Officer Knotts immediately initiated a traffic stop, and Appellant pulled into a private driveway. According to Officer Knotts, when he asked Appellant for his license and insurance information, Appellant acted strange, seemed disoriented, and fumbled through his camera bag before pulling his wallet from his shorts pocket. Officer Knotts also noticed that Appellant's eyes were red, glassy, and bloodshot. Appellant had a hard time concentrating and did not properly respond to Officer Knotts's questioning. Appellant told Officer Knotts that he had consumed one twelve-ounce Keystone beer about an hour prior to the stop. However, Officer Knotts found an open twelve-ounce Keystone beer in the front passenger seat of Appellant's truck, and the can was cold to the touch.

Officer Knotts asked Appellant to perform some field sobriety tests. On the horizontal gaze nystagmus test, Officer Knotts observed a lack of smooth pursuit in both eyes and four out of the six nystagmus clues. Appellant then failed to maintain the mandated stance in the walk-and-turn test. He stated that he could not perform the test because he was tired and refused to continue the field sobriety tests all together. Appellant also refused to take a breath test. Officer Knotts arrested Appellant for DWI due to the loss of use of his mental and physical faculties.

Appellant sought to suppress all evidence from the traffic stop. The trial court held a hearing on his motion to suppress after jury selection but before the presentation of evidence. At the conclusion of the hearing, the trial court denied Appellant's motion to suppress. A jury convicted Appellant of DWI and sentenced him to twenty-five days' confinement and a fine of $650. This appeal followed.

## Discussion

In two points, Appellant argues that the trial court erred in denying his motion to suppress because Officer Knotts had no probable cause or reasonable suspicion to justify the initial traffic stop. The State argues that Officer Knotts

3

had reasonable suspicion that Appellant had violated section 545.060(a) of the Texas Transportation Code.[1]

**1.    Standard of Review**

Generally, we review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644,

_____

[1] On appeal, the State does not argue that Officer Knotts had probable cause for the stop.

4

652-53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53. The historical facts in this case are not disputed; therefore, we review the ruling on the motion to suppress de novo. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

## 2. Suppression Hearing Testimony

Officer Knotts was the State's only witness at the suppression hearing. He testified, in relevant part, as follows:

Q. Okay. And around 12:25 a.m., did you observe anything out of the ordinary?

A. I observed a white vehicle commit -- a white truck commit a traffic violation, and it caught my attention.

Q. Okay. And what was that traffic violation?

A. Failed to drive in a single lane of traffic.

Q. Okay. Could you describe for the Judge exactly how the vehicle failed to maintain a single lane of traffic?

A. Sure. The vehicle was observed traveling eastbound on Debbie Lane. It crossed the white line, approximately a tire's width, and then it drifted over and touched the white line two more times.

. . . .

Q. And you also testified the sole reason why you stopped that vehicle was for failure to maintain a single lane of traffic.

A. That's correct.

Q. You also testified that you observed the vehicle cross over the white line one time, approximately a tire's width --

A. Correct.

Q. -- and then drift within its lane two other times --

A. And touch the white line.

Q. -- and touch the white line. Okay.

. . . .

Q. Do you recall what block number that was, approximately?

A. The violation was in the 100 block.

. . . .

Q. And where did you effectuate the traffic stop?

A. The vehicle stopped in the 200 block of Debbie, East Debbie.

Q. So approximately a one-block period?

A. Correct.

. . . .

Q. So nothing was dangerous about moving over that line?

6

A. No vehicles were almost struck, so, no.

    . . . .

Q. Okay. Could you tell the Court the Transportation Code definition of "failure to maintain a single lane"?

A. If vehicles do not -- the vehicle has to travel within the lane of traffic; then, if it's going to change lanes, it needs to signal that lane-change. He never signaled any lane-change, so that would be what I based the traffic stop off of.

Q. And that's your understanding of the Transportation Code definition?

A. Failure to maintain a single lane of traffic while operating a motor vehicle.

Q. Okay. Did the vehicle commit any other traffic violations other than crossing that line one time?

A. No.

Q. Did you observe any incident that came close to causing an accident or was unsafe, in any manner, in that regard?

A. No.

Officer Knotts also testified that there was not a vehicle in the adjacent lane when Appellant's tires crossed the line and that his vehicle did not strike the curb when it crossed the line.

### 3. Reasonable Suspicion

In his second point, Appellant argues that Officer Knotts illegally seized him by stopping him without reasonable suspicion that he was, had been, or soon would be engaged in criminal activity. We will consider this point first because if the stop was unjustified by reasonable suspicion, then it was also unjustified under the more stringent standard of probable cause. *See Klare v. State*, 76 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

The Fourth Amendment[2] protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Once the defendant has made this

---

[2] Where, as in this case, the appellant has not separately briefed state and federal constitutional claims, we assume that the appellant claims no greater protection under the state constitution than that provided by the federal constitution. *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, we will analyze Appellant's claim solely under the Fourth Amendment of the United States Constitution, following guidelines set by the United States Supreme Court in interpreting the Fourth Amendment. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

8

showing, the burden of proof shifts to the State, which must then establish that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

The Supreme Court has held that a detention is reasonable under the Fourth Amendment if the government agent reasonably suspects a person of engaging in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328.[3] Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492–93. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. at 492.

---

[3] Because a routine traffic stop typically involves only a short, investigative detention, as opposed to a custodial arrest, we analyze traffic stops under the principles developed for investigative detentions set forth in *Terry v. Ohio*. 392 U.S. at 22, 88 S. Ct. at 1880; *see Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, no pet.).

9

### a. Section 545.060(a) of the Texas Transportation Code

Officer Knotts testified that he stopped Appellant because he observed

Appellant failing to maintain a single lane of traffic. The relevant provision of

the transportation code—section 545.060(a)—provides as follows:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> > (1) shall drive as nearly as practical entirely within a single lane; and
> >
> > (2) may not move from the lane *unless that movement can be made safely*.

TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999) (emphasis added).

Although the statute has two subparts, it does not create two separate

offenses, but rather only one: moving out of a marked lane when it is not safe

to do so. *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998,

pet. ref'd). In *Hernandez*, the Austin court analyzed the legislative history of

section 545.060 and determined that because neither section 545.060 nor its

predecessor created two offenses, the words "unless that movement can be

made safely" necessarily modify both subsections, adding,

> [T]he very vagueness of the requirement that the operator of a vehicle drive within a single lane "as nearly as practical" indicates that the legislature did not intend for the initial clause of the statute to create a discrete offense apart from some element of unsafety. This conclusion is bolstered by the use of the term "practical"

10

rather than "practicable." The latter term has a somewhat more definite meaning: "capable of being accomplished; feasible; possible," while the former term is more ambiguous: "manifested in practice; capable of being put to good use." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 678 (2d ed.1995).

*Id.*

Thus, the *Hernandez* court held that a vehicle's slow drift until two of its tires crossed into another same-direction lane, at an hour when there were few other cars about, did not give rise to a reasonable suspicion of criminal activity because the State presented no evidence that the driver's failure to drive in a single lane was unsafe or dangerous. *Id.* at 869–70, 872. Many other courts have reached the same conclusion under similar facts. *See*, *e.g.*, *State v. Huddleston*, 164 S.W.3d 711, 713–14 (Tex. App.—Austin 2005, no pet.) (holding officer lacked reasonable suspicion of violation of section 545.060 when he saw car slowly drift over fog line by a few inches five times over five to six miles while traveling one to eight miles per hour under speed limit); *Eichler v. State*, 117 S.W.3d 897, 898 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding no reasonable suspicion when car crossed line between middle and fast lanes once on interstate highway in light traffic at 12:30 a.m.); *Bass v. State*, 64 S.W.3d 646, 649–50 (Tex. App.—Texarkana 2001, pet. ref'd) (holding no reasonable suspicion existed when car swerved within and outside

11

its lane over two and one-half to three miles and was passed by other vehicles); *Corbin v. State*, 33 S.W.3d 90, 94 (Tex. App.—Texarkana 2000), *rev'd on other grounds*, 85 S.W.3d 272 (Tex. Crim. App. 2002) (holding no reasonable suspicion existed when in course of twenty feet, defendant drove thirteen miles per hour under speed limit and crossed over fog line once before driving one mile with no further infractions); *State v. Cerny*, 28 S.W.3d 796, 798 (Tex. App.—Corpus Christi 2000, no pet.) (holding no reasonable suspicion existed when car "just barely" swerved into shoulder of lane of oncoming traffic, then swerved over inside fog line three to four times); *State v. Arriaga*, 5 S.W.3d 804, 805 (Tex. App.—San Antonio 1999, pet. ref'd) (holding no reasonable suspicion existed when van drifted toward center divider—but within lane—two to seven times near nightclub around 1:50 a.m.); *State v. Tarvin*, 972 S.W.2d 910, 911 (Tex. App.—Waco 1998, pet. ref'd) (holding no reasonable suspicion existed when car drifted over outside fog line two to three times at 2:00 a.m. near nightclub).

By contrast, in those cases where courts have held that a driver's failure to maintain a single lane triggered a reasonable suspicion that the driver had violated section 545.060, the failure to drive in a single lane was coupled with some other factor that indicated danger or a lack of safety, such as the driver's

leaving a bar, driving in heavy traffic, crossing into a lane of oncoming traffic, or weaving over an extended distance or time. *See, e.g., Tyler v. State*, 161 S.W.3d 745, 746 (Tex. App.—Fort Worth 2005, no pet.) (holding reasonable suspicion existed when police stopped driver after anonymous tip of erratic driving and weaving in heavy traffic on Thanksgiving weekend); *Cook v. State*, 63 S.W.3d 924, 926–27 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding reasonable suspicion existed when car sped out of bar parking lot, suspiciously pulled into gas station for ten to fifteen seconds, then drove "all over" two unmarked roads before "constantly" crossing into other lane for about two minutes on marked lane-divided road); *Griffin v. State*, 54 S.W.3d 820, 821 (Tex. App.—Texarkana 2001, pet. ref'd) (holding reasonable suspicion existed when, after receiving informant tip that defendant would be carrying heroin, officer saw defendant's car cross yellow line into lane of oncoming traffic); *Martinez v. State*, 29 S.W.3d 609, 610 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding reasonable suspicion existed when car drifted onto shoulder for only a few seconds, but on freeway during busy traffic); *Tex. Dep't of Pub. Safety v. Bell*, 11 S.W.3d 282, 282–83 (Tex. App.—San Antonio 1999, no pet.) (holding reasonable suspicion existed when car crossed into shoulder of lane of oncoming traffic); *Gajewski v. State*, 944

13

S.W.2d 450, 451 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding reasonable suspicion existed when on two-lane highway, one-third of car crossed into oncoming lane two to three times).

In this case, there is no evidence that Appellant's failure to drive in a single lane was unsafe. The specific facts articulated by Officer Knotts show that two of Appellant's tires drifted into an adjacent same-direction lane one time and by no more than a tire's width. There was no other vehicle in the lane next to Appellant, and Officer Knotts expressly stated that the movement of Appellant's truck was not unsafe or dangerous. Absent from Officer Knott's testimony are any of the factors present in the cases cited above where courts found a reasonable suspicion that a driver had violated section 545.060, such as a driver's crossing the center line into oncoming traffic.

The State argues that because Officer Knotts *believed* that Appellant had committed an act that Officer Knotts *believed* was prohibited by the transportation code, he had reasonable suspicion to stop Appellant. The State relies on a series of cases, some from this court, for the proposition that the State is not required to prove a defendant violated a traffic law but only needs to elicit testimony that the officer reasonably suspected that a defendant violated a traffic law. *See McQuarters v. State*, 58 S.W.3d 250, 255 (Tex.

14

App.—Fort Worth 2001, pet. ref'd); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

Officer Knotts testified that in his "understanding" of the transportation code, a driver commits an offense merely by failing to maintain a single lane of traffic and that if a driver intends to change lanes, he needs to signal that lane change.[4] There is no evidence that Appellant "changed lanes" or intended to change lanes; thus, his failure to activate his turn signal could not provide a reasonable suspicion for the stop. That leaves Officer Knotts's "understanding" of what constitutes a violation of section 545.060(a) as the only possible basis for the stop. As our foregoing analysis of the statute and case law shows, Officer Knotts's understanding was wrong.

An officer's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.). And an officer's honest but mistaken understanding of the traffic law which prompted a stop is not an exception to the reasonable suspicion requirement. *Goudeau*, 209 S.W.3d at

---

[4] *See* TEX. TRANSP. CODE ANN. § 545.104(a) (Vernon 1999) ("An operator shall use the [turn] signal . . . to indicate an intention to turn, change lanes, or start from a parked position.").

15

716. Thus, Officer Knotts's misunderstanding that section 545.060(a) requires only crossing of the lane line—regardless of whether it is unsafe or dangerous to do so—will not support a reasonable suspicion.

*McQuarters* and the other cases cited by the State do not change this result. *McQuarters* cites *Garcia* for the proposition that "the State was not required to prove appellant violated a traffic law. The State only needed to elicit testimony that [the police officer] knew sufficient facts to reasonably suspect that appellant had violated a traffic law." 58 S.W.3d at 255. In the relevant portion of *Garcia*, the court of criminal appeals stated that "[t]he State is correct that it need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion." 43 S.W.3d at 530. Neither case holds or even suggests that an officer's ignorance of the law will somehow satisfy the Fourth Amendment and rise to the level of reasonable suspicion. To so hold would transform the Fourth Amendment's objective standard into a subjective standard dependent on the whims of the police's "understanding" of the law.

We hold that Officer Knotts failed to articulate specific facts that support a reasonable suspicion that Appellant had violated section 545.060(a). *See Ford*, 158 S.W.3d at 492–93. We therefore hold that there was no reasonable

16

suspicion for the initial stop and that the trial court erred by failing to suppress the evidence developed during the stop.  We sustain Appellant's second point.

Because the State failed to carry its burden of showing a reasonable suspicion, it also failed to carry the heavier burden to show probable cause for the stop, and we sustain Appellant's first issue.  *See Klare*, 76 S.W.3d at 75.

## Conclusion

Having sustained both of Appellant's points, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.


ANNE GARDNER
JUSTICE

EN BANC

MCCOY, J. filed a concurring opinion.

PUBLISH

DELIVERED:  August 14, 2008

17



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-183-CR

CHAD AVERY FOWLER                                                APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

I agree with the result reached by the majority in this case but do not agree with one aspect of their reasoning. As recounted by the majority, section 545.060(a) of the Transportation Code reads as follows:

(a)     An operator on a roadway divided into two or more clearly marked lanes for traffic:

(1)     shall drive as nearly as practical entirely within a single lane; and

(2) may not move from the lane unless that movement can be made safely.

TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 1999). I cannot agree that the phrase "unless that movement can be made safely" modifies both subsections (1) and (2), as held by the majority, for the following reasons: (1) section (a) is clearly separated into two discrete sections, (1) and (2), and the language in question is clearly contained solely within the second section; (2) the separate and independent nature of the sections is emphasized by the semicolon separating the sections; (3) the term "movement" is clearly referring to the word "move" three words before the phrase begins, and that word is not contained in subsection (1); (4) if the phrase is added to the first subsection, which it purports to modify, the initial subsection would read: "shall drive as nearly as practical entirely within a single lane unless that movement can be made safely"--this is jabberwocky.[5]

Nevertheless, I reluctantly agree that section (a) of the Transportation Code contains but one offense, enumerated as subsections (1) and (2), and that the tsunami of case law requiring some other endangering factor, besides the

---

[5] *See* LEWIS CARROLL, JABBERWOCKY AND OTHER POEMS 17 (Courier Dover Publications 2001).

failure to drive in a single lane, to be a violation of the statute, is correct.

Hence, I concur in the outcome as determined by the majority.


                                        BOB MCCOY
                                        JUSTICE

PUBLISH

DELIVERED:  August 14, 2008


3