

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-370-CR

KERRY KENT HUGHES                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

## FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Kerry Kent Hughes appeals from the trial court's denial of his motion to suppress.  We affirm.

### Background

While on patrol on January 12, 2007 around 2:00 a.m., Officer Scott Williamson of the University of North Texas Health Science Center (UNTHSC)

---

[1] *See* Tex. R. App. P. 47.4.

in Fort Worth noticed a car driving "real slow" on Arch Adams.[2] It was going "[w]ay under the speed limit," about fifteen miles/hour on a thirty mile/hour street, as if the driver was "confused of where he was going or what road he was on." There were "a few" other cars on the road that morning, and the driver of the car he noticed was driving significantly slower than those cars. Officer Williamson started following the car and noticed that the driver was having a hard time maintaining a single lane of travel and was "breaking the point of the lane." As the officer was following the car, the driver turned onto Camp Bowie and almost struck the far left curb of the lane "and then kind of bounced back into the right lane." In response to a question from the State, Officer Williamson testified that he thought at the time the driver had committed a traffic offense, but he learned later that the driver did not, in fact, commit any traffic offense. However, Officer Williamson testified that he also thought the driving was unusual. After Officer Williamson turned on his overhead light to initiate a stop, the driver, later identified as appellant, kept

---

[2] A campus police officer has primary jurisdiction in "all counties in which property is owned, leased, rented, or otherwise under the control of the institution of higher education or public technical institute that employs the peace officer." Tex. Educ. Code Ann. § 51.203(a) (Vernon 2006). Officer Williamson testified that his chief has limited the UNTHSC officers' jurisdiction to one square mile all the way around the campus. Appellant did not and has not contended that the events upon which his motion to suppress is based occurred outside of Officer Williamson's jurisdiction.

driving for several blocks without braking before pulling over. Officer Williamson testified that at that time, he was suspicious of the driver because "at that time of the morning bars are closing, somebody that can't drive in a single lane, almost striking a curb, it was my impression that the vehicle could have been - - or the driver of the vehicle could have been under influence or drugs, or something to that nature." Upon further questioning by the State, Officer Williamson testified that he was trained at the police academy to detect signs that a person may be driving while intoxicated, that appellant showed signs of intoxication the night he stopped him, and that those signs were, specifically, "[f]ailure to maintain a single lane, drifting from lane to lane, almost striking curbs." In response to the question, "Were you taught in the police academy that if a person is driving well under the speed limit that that may . . . be a sign that they are intoxicated?," Officer Williamson answered, "Yes."

On cross-examination, appellant's counsel asked Officer Williamson if he had his report with him, and Officer Williamson handed him the document. When appellant's counsel asked if it was the entire report Officer Williamson had prepared, he said, "No, sir. That is just the DWI case report . . . . That's not the whole incident report." Officer Williamson stated that it was part of the report but not all of the documentation. But he agreed when counsel asked, "Would this . . . 11-page report . . . contain all the information that you

3

recorded regarding your contact with [appellant] that night as far as the reason for the stop and then the field sobriety evaluations?" He agreed that the report contained a detailed paragraph entitled "Probable Cause."[3] He agreed that at the police academy he was trained to put everything in a report that is pertinent to a stop and arrest, i.e., "[a]s much as you - - what you need to put in." Officer Williamson admitted that he wrote in his report that he pulled over appellant for "failure to maintain a single lane of travel" and that he did not write that he thought appellant might be intoxicated.[4] He agreed that he could have written that the reason for the stop was intoxication "if that would have been the reason for the stop" (in the words of appellant's counsel). When counsel asked if "the truth is the reason for the stop was that failure to maintain a single lane of travel," Officer Williamson answered, "Correct."

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own

---

[3] Regardless, the report was not admitted into evidence at the hearing.

[4] Officer Williamson also agreed that he followed appellant only for a short period of time over several blocks.

4

factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818

5

(Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*.; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

In a motion to suppress hearing, the trial court may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted, because the trial court observes first hand the demeanor and appearance of a witness, as opposed to an appellate court, which can only read an impersonal record. *Ross*, 32 S.W.3d at 855.

**Issue on Appeal**

6

In a single issue, appellant challenges the trial court's denial of his motion to suppress. Specifically, he contends that the stop was invalid and without reasonable suspicion because Officer Williamson conceded that the sole reason he pulled over appellant was because he thought appellant committed the offense of failure to maintain a single lane of travel when, in fact, he had not. The State contends that regardless of what the officer's subjective belief was, he articulated specific facts from which the trial court could have determined that he had reasonable suspicion to stop appellant.

**Applicable Law and Analysis**

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. at 492–93. This is an objective standard that disregards any subjective intent of the officer making

7

the stop and looks solely to whether an objective basis for the stop exists. *Id.* at 492. Because the trial court here did not file findings of fact and conclusions of law, we must determine whether the evidence, viewed in the light most favorable to the trial court's decision to deny the motion to suppress, supports implied findings supporting that decision, in other words, whether Officer Williamson testified to specific, articulable facts justifying his detention of appellant. *See Kelly*, 204 S.W.3d at 819.

Appellant's argument essentially urges this court to judge the validity of the stop based upon Officer Williamson's mistaken subjective belief that appellant committed a traffic violation. At oral argument, appellant contended that even though Officer Williamson testified that he thought appellant was intoxicated based upon his training and the specific instances of unusual driving he observed, the fact that Officer Williamson did not include this information in his report written at the time of the offense shows that he was being untruthful.

However, the trial court obviously believed Officer Williamson's testimony, and we must defer to its assessment of Officer Williamson's credibility. *Ross*, 32 S.W.3d at 855. Thus, we must take as true Officer Williamson's testimony that he also thought at the time that appellant could have been intoxicated based upon his training and the specific instances of

8

driving he observed.  *See Curtis v. State*, 209 S.W.3d 688, 694–95 (Tex. App.—Texarkana 2006) (reversing trial court's denial of motion to suppress and noting that officer testified that he had reasonable suspicion appellant was intoxicated but his report stated that only reason for stopping appellant was that appellant committed traffic violation of weaving), *rev'd*, 238 S.W.3d 376, 380–81 (Tex. Crim. App. 2007) (holding that court of appeals failed to consider officers' testimony that provided specific, articulable facts justifying reasonable suspicion that appellant was intoxicated).  And, as stated above, we must determine reasonable suspicion based upon an objective standard considering the totality of the circumstances, not upon the officer's subjective intent in making the stop.  *Ford*, 158 S.W.3d at 492–93.  Thus, we must determine whether the objective facts testified to by Officer Williamson show that he had reasonable suspicion to justify stopping appellant, regardless of the sole reason stated in his report.  *Curtis*, 238 S.W.3d at 380–81.

Here, Officer Williamson observed appellant driving well below the speed limit and slower than other cars on the road around 2:00 a.m. when the bars were closing.  Officer Williamson testified that he had been trained that slow driving was a possible sign of intoxication.  Appellant was having trouble driving the car within a single lane of traffic, and as Officer Williamson followed him, appellant turned and almost ran into the left hand curb.  Appellant then

9

apparently overcorrected and "kind of bounced back into the right lane." We conclude and hold that Officer Williamson testified to specific, articulable facts that would lead a reasonable person to conclude that the driver of the car was possibly driving while intoxicated.[5] *See id.*; *James v. State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd). Therefore, we cannot say that the trial court erred by denying appellant's motion to suppress. We overrule appellant's sole issue.

## Conclusion

Having overruled appellant's sole issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, WALKER, and MCCOY, JJ.

MCCOY, J. filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

---

[5] These facts distinguish this case from *Fowler*, in which the facts testified to by the officer initiating the traffic stop, even if believed by the trial court, were not sufficient to establish reasonable suspicion of either DWI or a violation of section 545.060(a) of the Texas Transportation Code. *Fowler v. State*, No. 02-06-00183-CR, 2008 WL 3540288, at *1–2 (Tex. App.—Fort Worth Aug. 14, 2008, pet. filed) (en banc).

DELIVERED:  November 20, 2008



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-370-CR

KERRY KENT HUGHES                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

I respectfully dissent.  A review of Officer Williams's testimony reveals that at no time did he testify that he stopped Hughes's vehicle because he suspected an intoxicated driver was at the wheel.  In fact, he unequivocally testified that *the reason,* as opposed to *one of the reasons,* that he stopped the car was the failure to maintain a single lane of travel.  He also testified that he learned after the stop that the driver did not commit any traffic offense.

As this court has recently observed in *Fowler v. State*,

An officer's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws. *United States v. Granado*, 302 F.3d 421, 423 (5th Cir. 2002); *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.). And an officer's honest but mistaken understanding of the traffic law which prompted a stop is not an exception to the reasonable suspicion requirement. *Goudeau*, 209 S.W.3d at 716. Thus, Officer Knotts's misunderstanding that section 545.060(a) requires only crossing of the lane line—regardless of whether it is unsafe or dangerous to do so—will not support a reasonable suspicion.

*McQuarters* and the other cases cited by the State do not change this result. *McQuarters* cites *Garcia* for the proposition that "the State was not required to prove appellant violated a traffic law. The State only needed to elicit testimony that [the police officer] knew sufficient facts to reasonably suspect that appellant had violated a traffic law." 58 S.W.3d at 255. In the relevant portion of *Garcia*, the court of criminal appeals stated that "[t]he State is correct that it need not establish with absolute certainty that a crime has occurred in order to show reasonable suspicion." 43 S.W.3d at 530. Neither case holds or even suggests that an officer's ignorance of the law will somehow satisfy the Fourth Amendment and rise to the level of reasonable suspicion. To so hold would transform the Fourth Amendment's objective standard into a subjective standard dependent on the whims of the police's "understanding" of the law.

*Fowler v. State*, No. 02-06-00183-CR, 2008 WL 3540288, at *5 (Tex. App.—Fort Worth Aug. 14, 2008, pet. filed) (en banc).

Therefore, I would hold, as the majority held in *Fowler*, that there was no reasonable suspicion for the initial stop and that the trial court erred in failing to suppress the evidence developed during the stop.

2

BOB MCCOY
JUSTICE

DELIVERED:  November 20, 2008