**Opinion issued December 15, 2016**



**In The**

# Court of Appeals

**For The**

# First District of Texas

——————————

**NO. 01-15-00805-CR**

——————————

**STEVEN KENT SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1969141**

---

**MEMORANDUM OPINION**

Steven Kent Smith was charged by information with driving while intoxicated. A jury found him guilty of the charge, and the trial court assessed a punishment of 20 days' incarceration in Harris County Jail and a $20 fine.

On appeal, Smith contends that the trial court erred in (1) refusing to instruct the jury on the legality of Smith's stop pursuant to article 38.23 of the Texas Code of Criminal Procedures; and (2) denying his motion to suppress evidence obtained as a result of the stop. We affirm.

## BACKGROUND

*Smith's stop and arrest*

In June 2014, Officer A. Mulato of the Houston Police Department served as a patrol officer on the west side of Houston. Officer Mulato was patrolling one night near the intersection of Dairy Ashford and Briar Forest at about 1:00 A.M. She entered the lane to make the left turn from Dairy Ashford onto Briar Forest and she came to a stop at the yellow left-turn signal. As she checked her rear-view mirror, she noticed the driver in the sports-utility vehicle behind her make an offensive gesture. During the red light, Officer Mulato continued to observe the driver, later identified as Smith.

When the light changed, Officer Mulato made the left turn and then moved to the right-hand lane, anticipating that Smith would pass her, which would allow her to continue to observe him and give her greater safety. She did not activate any of her emergency equipment. Smith, though, stopped directly behind the patrol car.

Officer Mulato waited for a few seconds to see if Smith would go around her. When he did not, Officer Mulato turned into a grocery store parking lot near the

2

intersection. Smith followed the patrol car into the parking lot. Officer Mulato noticed Smith was still following her, so she drove further into the lot. Smith continued to follow her, then drove around her and left the parking lot on the Dairy Ashford side, heading northbound. Officer Mulato observed Smith as he again turned onto Briar Forest, heading eastbound. According to Officer Mulatto, Smith was driving in an aggressive manner, "jerk[ing] the car around to go and come back out."

After Officer Mulato had followed Smith for about two miles, she called her supervisor, Sergeant Morton, and told him that she was going to do a traffic stop, but that she would first wait for him to arrive so that he could provide backup. Officer Mulato had not observed Smith violate any traffic law before she made the call.

About half a mile later, Smith failed to signal a lane change before making a U-turn and Officer Mulato pulled him over. When Officer Mulato approached Smith, she noticed that his speech was slurred, his breath had a strong odor of alcohol, his eyes were red and glassy, he seemed aggressive, and his shirt was "kind of disheveled a little bit."

Officer Mulato asked Smith if he had been drinking, and Smith replied that he had had three glasses of rum and cola between midnight and 12:45 A.M. Smith confirmed that he had eaten earlier in the evening and had not taken any medications.

When Sergeant Morton arrived at the scene, he observed that Smith smelled of alcoholic beverage, Smith's speech was slurred, and that he had an unnatural sway. Smith also told Sergeant Morton he had consumed three drinks.

Based on his observations, Sergeant Morton decided to administer the horizontal gaze nystagmus (HGN) test. Sergeant Morton testified that Smith exhibited six of the six possible clues, indicating intoxication. Sergeant Morton also observed as Officer Mulato administered the one-leg-stand test and the walk-and-turn test. Although he did not remember any specifics of the testing, Sergeant Morton remembered that "there were enough clues on each test to make an arrest determination."

Officer Mulato arrested Smith, and he was brought to the HPD station downtown. Smith arrived at the station at about 3:00 A.M. M. Skelton, the DWI technician present, testified that she did not smell alcohol on him, but that her sinus problems sometimes prevented her from detecting any smell. During the one-leg stand, Skelton noticed that Smith had a slight sway, but he passed the test. Smith failed the walk-and-turn. Skelton testified that her observations during Smith's testing led her to believe that he had lost the use of his mental faculties. Smith also took a breath test at that time, which showed his blood-alcohol concentration level was 0.134.

*Proceedings in the trial court*

Before trial, defense counsel filed a motion to suppress evidence of the results of Smith's field sobriety testing, the incriminatory statements he made to Officer Mulato and Sergeant Morton, and the result of the breath test. Smith's motion requested a hearing, but nothing in the record indicates that the trial court heard or ruled on the motion before trial.

After the jury heard opening arguments and Officer Mulato's testimony about the testing requirements, defense counsel sought a hearing on the motion to suppress, and the trial court proceeded to hear the motion. The trial court ruled that Officer Mulato was not qualified to testify about Smith's performance on those tests or about her observations of Smith's performance during the HGN test. The trial court brought the jury back into the courtroom and instructed it not to consider Officer Mulato's testimony on those issues for any purpose. The trial court denied the rest of Smith's motion. It orally pronounced the following findings of fact and conclusions of law to support its ruling:

- Smith admitted to having three alcoholic drinks within a 45-minute period;

- Officer Mulato observed Smith driving in an erratic manner: he pulled behind her and, in a parking lot, drove past her, changed lanes without signaling, and made a u-turn;

- Based on Smith's behavior, Officer Mulato suspected that he might be intoxicated;

5

- Officer Mulato noticed that Smith had slurred speech, a strong odor of alcoholic beverage, red, glassy eyes, and his shirt was disheveled;

- Based on the totality of the circumstances, the evidence at this point is sufficient to support a reasonable person's belief that Smith committed the offense of driving while intoxicated.

## DISCUSSION

## I.      Denial of Jury Instruction on the Legality of the Stop

### A.      Standard of review

Smith contends that the trial court erred in denying his request for a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure, because the evidence demonstrated a factual dispute over the legality of the traffic stop. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). If a fact issue exists concerning whether evidence was unlawfully obtained, then a trial court must instruct the jury that if it believes that the evidence was obtained in violation of article 38.23, it should disregard the evidence so obtained. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Rocha v. State*, 464 S.W.3d 410, 418–19 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). The evidence must (1) raise an issue of fact; (2) be affirmatively contested; and (3) be material to the lawfulness of the challenged conduct. *Madden*, 242 S.W.3d at 510; *Rocha*, 464 S.W.3d at 419. The defendant must request a jury instruction on a specific historical fact to obtain one. *Madden*, 242 S.W.3d at 511. "[I]f other facts, not in dispute, are sufficient to support the

lawfulness of the challenged conduct, then the disputed fact . . . is not material to the ultimate admissibility of the evidence." *Id.* at 510. In other words, "[t]he disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Id.* at 511.

## B.    Analysis

Before the trial court read the charge to the jury, Smith requested an article 38.23 charge instruction concerning reasonable suspicion and "probable cause for arrest since [Officer Mulato] testified that she didn't have probable cause before she did the standardized field sobriety tests, the walk and turn and one-leg stand were suppressed; and Officer Morton never testified that he communicated the six clues to Mulato." On appeal, Smith specifically directs our attention to Officer Mulato's testimony concerning her reason for stopping Smith, contending that it raised a factual dispute about whether she stopped him because she suspected he was intoxicated or whether she stopped him for failure to signal a lane change.[1] Any dispute, however, is immaterial. The decision to stop a vehicle is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Walter*

---

[1]    Mulato's offense report states that "the defendant changed lanes without signaling and made an abrupt U-turn." The term "without signaling" modifies the reference to Smith changing lanes and implies that Officer Mulato stopped Smith because of his failure to signal. Officer Mulato's testimony supports this interpretation.

*v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996)). With an objectively valid reason for a traffic stop, the constitutional reasonableness of the stop does not depend on the actual motivations of the officer. *See Whren*, 517 U.S. at 813, 116 S. Ct. at 1774. The undisputed evidence shows that Officer Mulato observed Smith change lanes without signaling, a violation of traffic law which provided justification for Smith's stop. We hold that the trial court did not err in denying Smith's request for an article 38.23 instruction.

## II. Denial of Motion to Suppress

### A. Preservation of error

As a threshold matter, we consider the State's contention that Smith waived his complaint regarding the admission of evidence relating to the stop and arrest. To preserve an issue for appeal, a timely objection must be made that states the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection and affords him an opportunity to rule on it, and (2) it affords opposing counsel an opportunity to respond to the complaint." *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). To preserve a complaint for review, all that is required of a party is "to let

the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992), *quoted in Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009); *see Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013).

Smith advanced his arguments for suppression of the evidence at two junctures during trial—after Officer Mulato's testimony and at the close of the State's evidence. Smith's motion to suppress the evidence of his stop and arrest following Officer Mulato's testimony occurred at a time when the trial court could correct the error. The trial court concluded that reasonable suspicion existed for the stop, but it instructed the jury not to consider a portion of Officer Mulato's testimony that went to showing probable cause, leaving the question of whether probable cause existed until after Sergeant Morton had testified. By moving for directed verdict, Smith challenged the sufficiency of the evidence of probable cause adduced through Sergeant Morton. Although the trial court denied Smith's motion, the motion came at a time when a ruling favorable to Smith would have resulted in effective relief. *See Layton*, 280 S.W.3d at 239. We hold that Smith adequately preserved his appellate challenge to the trial court's ruling on his motion to suppress.

## B.    Standard of review

We review a trial court's factual findings for abuse of discretion and its application of the law to the facts de novo.  *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).  We defer to a trial court's determination of historical facts, especially those based on an evaluation of a witness's credibility and demeanor. *Id.*; *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012).  We apply the same deference to the trial court's ruling on mixed questions of law that deepend on a witness's credibility and demeanor.  *See Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).

## C.    Analysis

Smith challenges the legality of the stop based on Officer Mulato's testimony that she intended to stop Smith before she saw him commit a traffic violation.  Whatever Officer Mulato's subjective motivation for following Smith, she did not stop him until after he changed lanes without signaling.  That observed violation of law provided an objectively valid reason for the traffic stop.  *See Whren*, 517 U.S. at 813, 116 S. Ct. at 1774; *see also* TEX. TRANSP. CODE ANN. §§ 542.301, 542.401, 545.104 (West 2015).

Smith also complains that probable cause did not support his arrest, but he focuses on statements made by Officer Mulato without considering Sergeant Morton's testimony.  Sergeant Morton testified concerning his administration of the

HGN test and his observations during the stop, supporting a finding of probable cause to support Smith's arrest. Sergeant Morton was present when Officer Mulato arrested Smith, and he testified that he made the arrest decision along with Officer Mulato.

Smith suggests that the trial court implicitly rejected Officer Mulato's claim that she observed a traffic violation, pointing to a statement made by the trial court in connection with a request that the parties provide legal authority on showing reasonable suspicion that someone is driving while intoxicated. On the contrary, the trial court specifically found in ruling on Smith's motion to suppress that Officer Mulato observed Smith change lanes without signaling.

Finally, Smith contends that the failure to signal a lane change is a minor traffic violation that does not support the reasonable suspicion required to detain a motorist. The cases Smith cites for this proposition, however, do not involve a failure to signal a lane change and are otherwise inapposite to the circumstances in his case. *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd), involved a driver who appeared to cross into the adjacent lane by a tire's width with no other vehicles nearby. *Id.* at 501, 504–05. The court of appeals held that the officer who stopped the driver mistakenly understood that the driver's actions violated traffic law. *Id.* at 505. Because no actual violation occurred, the trial court concluded, no reasonable suspicion existed, and it held that the trial court erred in

11

failing to suppress the evidence developed during the stop.[2]  *Id.*  In *Trahan v. State*, 16 S.W.3d 146 (Tex. App.—Beaumont 2000, no pet.), the court of appeals found no evidence that the defendant had turned or changed lanes as he exited the freeway; thus, he was not required to signal and the trial court erred in denying the defendant's motion to suppress.  *See id.* at 147.  Likewise, in *State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006), the Court upheld the suppression of the evidence based on the credibility determination underlying the trial court's finding that the defendant's arrest was not precipitated by a traffic violation.  *Id.* at 590.

None of these cases supports Smith's theory that the trial court was required to disregard the traffic violation.  We hold that the trial court acted within its discretion in upholding the stop based on evidence that Smith violated the law by failing to signal a lane change.  Accordingly, the trial court did not err in denying Smith's motion to suppress evidence of the stop.

---

[2]     The Fort Worth Court of Appeals recently observed that the United States Supreme Court,  in *Heien v. North Carolina*, ___ U.S. ___, 135 S. S Ct. 530 (2014), held that no Fourth Amendment violation occurred when an officer relies on a reasonable but mistaken understanding of traffic law in making a stop.  135 S. Ct. at 540.  The rule announced in *Heien*, the appellate court observed, was a departure from the rule applied in *Fowler v. State*, calling into question the validity of its holding in *Fowler* that the stop was invalid.  *See State v. Varley*, ___ S.W.3d ___, 2016 WL 4540491, at \*7 (Tex. App.—Fort Worth Aug. 31, 2016, pet. filed).

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do not publish.  TEX. R. APP. P. 47.2(b).