NUMBER 13-08-00056-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

DINO FERREIRA SCARDINO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the County Court at Law

of Aransas County, Texas.

 


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Benavides


Opinion by Chief Justice Valdez
 After the trial court denied a pretrial motion to suppress evidence obtained during
a traffic stop that was filed by appellant, Dino Ferreira Scardino, a jury found him guilty of
driving while intoxicated, a Class B misdemeanor, which was enhanced to a Class A
misdemeanor because of a prior conviction for driving while intoxicated. See Tex. Penal
Code Ann. § 49.04 (Vernon 2003), § 49.09(a) (Vernon Supp. 2008). The trial court
sentenced Scardino to confinement in jail for one year and probated the sentence for one
year; it also assessed a $4,000 fine and court costs. On appeal, Scardino challenges the
trial court's denial of his motion to suppress. We reverse and remand.

I. Background

 The facts in this case are undisputed. At approximately 10:30 p.m. on January 12,
2007, Texas Department of Public Safety Trooper H. Harkins was traveling southbound on
Highway 35 in the town of Fulton, Texas, when he came upon a 2005 Ford pickup traveling
in the same direction. At the suppression hearing, Trooper Harkins testified on direct
examination by the State that:

As I was behind the driver, I observed the driver, I observed the vehicle to be
weaving back and forth within its lane, kind of a slow drift, never crossing the
line. Just kind of simply kind of back and forth within its lane. I continued to
follow the vehicle. The driver the whole time was just kind of weaving back
and forth, never driving straight.


It came to a point on the highway where the driver crossed the fog line, he
steered back to get back in his lane. When he did, he was angling towards
the center stripe. As he was going towards the center stripe, he then steered
back to keep from crossing the line in a very--just really erratic kind of rough
driving.


I continued to follow him after that. And he just kind of [went] back and forth
in the lane until he got straightened out down the highway. And I went ahead
and stopped him.


Trooper Harkins testified that he observed the pickup's driving for approximately half a mile
before initiating a traffic stop. The trooper explained he initiated the traffic stop out of
concern that the pickup was weaving because the driver was medically ill; he did not testify
that he initiated the traffic stop because he suspected Scardino was intoxicated. Upon
contacting Scardino, Trooper Harkins noticed that his eyes were glassy and bloodshot, and
his speech was slurred. The trooper asked Scardino if he had been drinking, and Scardino
replied that he had drank four beers. Trooper Harkins then administered several field
sobriety tests and a breathalyzer. Scardino's breath specimen registered above the legal
limit, and he was arrested.

 On cross examination by defense counsel, the following discussion took place:

[Defense Counsel]: So you cannot testify to [the trial court] that Mr.
Scardino did not--or that he did anything unsafe, can
you?


[Trooper Harkins]: No, sir. It was not an unsafe movement. It was simply
a jerky kind of sporadic driving. But it was at no time
unsafe.


[Defense Counsel]: And you agree with the proposition that [the county
attorney] told the [trial court] that, number one, all this
occurred within the lane--within Mr. Scardino's
lane--with the exception of crossing over the fog line
one time?


[Trooper Harkins]: That's correct, sir.


[Defense Counsel]: And you agree with his analysis, also, that--what you
said is that after he came off the fog line, he pulled back
into his lane but did not cross over another stripe. 
Correct?


 [Trooper Harkins]: That is correct. At no time did he cross over the center
stripe.


After cross-examining Trooper Harkins, defense counsel offered a dashboard videotape
recording that was taken the evening Trooper Harkins encountered and arrested Scardino,
and it was admitted and viewed by the trial court. 

 The trial court then entertained arguments from both parties. The State posited
reasonable suspicion existed on the grounds that: (1) Trooper Harkins' believed Scardino
violated section 545.058 (1) of the transportation code by driving on the shoulder; and (2)
Trooper Harkins appropriately exercised a law enforcement officer's "community caretaking
function." Scardino countered by arguing that reasonable suspicion did not exist under the
"totality of the circumstances" test. In orally denying Scardino's motion to suppress, the
trial court stated: "If it would have been just one weave in there, I probably would have
granted it. There was more than one." Later, a written order denying the motion was
signed. After denying Scardino's motion, the trial court issued the following pertinent
findings of fact:

1. On January 12, 2007, the Defendant was weaving across the
shoulder line (fog line) and almost over the center line and also wove
within his own lane while operating a motor vehicle in a public place
in Aransas County, Texas. He was subsequently pulled over by a
Department of Public Safety officer. The stopping (arresting) officer
did not specifically state the defendant did this weaving in an "unsafe"
manner.


2. During the traffic stop, the defendant exhibited signs of intoxication
while undergoing field sobriety testing. The defendant was arrested
for driving while intoxicated.


 Scardino's case was tried to a jury, and he was found guilty. This appeal ensued.

II. Discussion

 In his sole issue, Scardino argues the State did not establish that reasonable
suspicion existed to pull him over under either section 545.058(a) of the transportation
code or the community caretaking exception to the Fourth Amendment's reasonable
suspicion requirement. The State, in a four-page brief that does not reference the two
justifications it asserted before the trial court, responds by arguing that the detention was
justified under the "totality of the circumstances." 

A. Standard of Review

 We review a trial court's ruling on a motion to suppress under a bifurcated standard
of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); see also
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's findings of
fact are given "almost total deference." Carmouche, 10 S.W.3d at 327-28; Guzman, 955
S.W.2d at 89-90. The trial court's denial of a motion to suppress is reviewed for abuse of
discretion, see Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999), but when the
trial court's rulings do not turn on the credibility and demeanor of the witnesses, we apply
a de novo standard of review, see Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005).

B. Applicable Law

 A warrantless automobile stop is a Fourth Amendment seizure analogous to a
temporary detention, and it must be justified by reasonable suspicion. Berkemer v.
McCarty, 468 U.S. 420, 439 (1984); Hernandez v. State, 983 S.W.2d 867, 869 (Tex.
App.-Austin 1998, pet. ref'd). The reasonableness of a temporary detention must be
examined in terms of the totality of the circumstances. Woods v. State, 956 S.W.2d 33,
38 (Tex. Crim. App.1997). A detaining officer must have specific articulable facts that,
taken together with rational inferences from those facts, lead him to conclude that the
person detained is, has been, or soon will be engaged in criminal activity. Id.; Hernandez,
983 S.W.2d at 869. It is the State's burden to prove that a warrantless detention was
lawful. State v. Huddleston, 164 S.W.3d 711, 716 (Tex. App.-Austin 2005, no pet.).

C. Analysis

 This case is analogous to Fowler v. State, 266 S.W.3d 498 (Tex. App.-Fort Worth
2008, pet. ref'd). In Fowler, a police officer observed a truck "commit a traffic violation" by
crossing "the white line, approximately a tire's width, and then it drifted over and touched
the white line two more times." Id. at 501. Regarding whether the driver moved safely, the
officer testified:

Q: So nothing was dangerous about moving over that line?


A: No vehicles were almost struck, so no.


 . . . .


Q: Okay. Did the vehicle commit any other traffic violations other than
crossing that line one time?


A: No.


Q: Did you observe any incident that came close to causing an accident
or was unsafe, in any manner, in that regard?


A: No.


Id. at 501. In support of its assertion that the officer had reasonable suspicion to detain
the driver, the State argued that the driver had violated section 545.060(a) of the
transportation code, which provides:

(a) An operator on a roadway divided into two or more clearly marked
lanes for traffic:


 (1) shall drive as nearly as practical entirely within a single lane;
and


 (2) may not move from the lane unless that movement can be
made safely.


See Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). The trial court denied the
driver's motion to suppress and did not issue findings of fact. Fowler, 266 S.W.3d at 500. 
The Fort Worth Court of Appeals reversed, holding that the arresting officer failed to
articulate specific facts supporting a reasonable suspicion that the driver had violated
section 545.060(a). Id. at 505 (citing Ford v. State, 158 S.W.3d 488, 492-93 (Tex. Crim.
App. 2005)).

 In this case, the State posited before the trial court that reasonable suspicion
existed to stop Scardino because Trooper Harkins suspected a violation of section 545.058
of the transportation code and the "community caretaking function." (2) See Tex. Transp.
Code Ann. § 545.058(a) (Vernon 1999). Section 545.058(a) provides that:

[a]n operator may drive on an improved shoulder to the right of the main
traveled portion of a roadway if that operation is necessary and may be done
safely, but only:


 (1) to stop, stand, or park; 


 (2) to accelerate before entering the main traveled lane of traffic; 


 (3) to decelerate before making a right turn; 


 (4) to pass another vehicle that is slowing or stopped on the main
traveled portion of the highway, disabled, or preparing to make
a left turn; 


 (5) to allow another vehicle traveling faster to pass; 


 (6) as permitted or required by an official traffic-control device; or 


 (7) to avoid a collision.


Id. A review of the record in light of section 545.058 does not reveal a violation of that
section because: Trooper Harkins never testified that Scardino "drove" on the shoulder;
the trial court did not find that Scardino "drove" on the shoulder; and a thorough review of
the "dashcam" video does not show that Scardino "drove" on the shoulder. Accordingly,
the State could not rely on an alleged violation of section 545.058 as a basis for the stop.

 As a second possible ground to support reasonable suspicion, the State posited that
Trooper Harkins stopped Scardino because, under an officer's "community caretaking
function," he feared for Scardino's safety. On appeal, Scardino contends that there is no
evidence to support the community caretaking exception. The trial court did not conclude
that Trooper Harkins exercised his community caretaking function in stopping Scardino. 
On the other hand, the trial court found that Scardino wove from the shoulder (fog) line,
almost over the center line, and wove within his lane. We will, nevertheless, analyze
whether the trial court's finding could support a detention under the community caretaking
exception to the Fourth Amendment's reasonable suspicion requirement.

 The court of criminal appeals has stated that a police officer may not properly invoke
his community caretaking function if he is primarily motivated by a non-community
caretaking purpose. See Corbin v. State, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002)
(citing Wright v. State, 7 S.W.3d 148, 151 (Tex. Crim. App.1999)). In evaluating whether
an officer reasonably believes that a person needs help, courts may look to a list of four
non-exclusive factors: (1) the nature and level of the distress exhibited by the individual;
(2) the location of the individual; (3) whether or not the individual was alone and/or had
access to assistance other than that offered by the officer; and (4) to what extent the
individual, if not assisted, presented a danger to himself or others. Id. (citing Wright, 7
S.W.3d at 151). 

 The trial court's findings do not reveal a level of distress that would lead a
reasonably prudent person to perceive that Scardino was distressed. Although the trial
court did not issue findings regarding the location of the incident or whether other
individuals were around, a review of the dashcam video shows that Scardino was detained
near several convenience stores, and if suffering a serious medical illness, he could have
easily pulled into one of the stores for assistance. Additionally, the video does not reveal
that, if unassisted, Scardino presented a danger to himself or others. Applying the Corbin
factors, we conclude that Trooper Harkins' alleged exercise of his community caretaking
function was not reasonable. See id.; see also White v. State, No. 02-07-234-CR, 2008
WL 1867139, at *4 (Tex. App.-Fort Worth Apr. 24, 2008, pet. ref'd) (memo op., not
designated for publication). There is no indication that Scardino's allegedly erratic driving
was because of a medical illness, as Trooper Harkins initially suspected. By his testimony,
Trooper Harkins's focus was largely on Scardino's allegedly suspicious driving rather than
on Scardino's health and welfare. The video supports this point because in it, Trooper
Harkins does not ask Scardino about his health; instead, he immediately informs Scardino
about weaving within his lane and conducts field sobriety tests. Accordingly, there is no
evidence to support a stop under the community caretaking function exception.

 We therefore hold that there was no reasonable suspicion for the initial stop and
that the trial court erred by failing to suppress the evidence developed during the stop. (3) 
Scardino's sole issue is sustained.

D. Harm Analysis

 Having sustained Scardino's sole issue, we must conduct a harm analysis to
determine whether the error calls for reversal of the judgment. See Tex. R. App. P. 44.2.
The harm analysis for the erroneous admission of evidence obtained in violation of the
Fourth Amendment is Rule 44.2(a)'s constitutional standard. Hernandez v. State, 60
S.W.3d 106, 108 (Tex. Crim. App. 2001). Accordingly, we must reverse the trial court's
judgment, unless we determine beyond a reasonable doubt that the error did not contribute
to Scardino's conviction or punishment. Tex. R. App. P. 44.2(a). The question is whether
the trial court's denial of Scardino's motion to suppress and its admission of the evidence
were harmless beyond a reasonable doubt. See Williams v. State, 958 S.W.2d 186, 194
(Tex. Crim. App. 1997). In applying the "harmless error" test, we ask whether there is a
"reasonable possibility" that the error might have contributed to the conviction. Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

 After carefully reviewing the record and performing the required harm analysis under
Rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error did not
contribute to Scardino's conviction. See Williams, 958 S.W.2d at 195. The erroneous
admission of the evidence obtained after the illegal stop formed the basis for Scardino's
conviction; thus, Scardino was harmed by its admission. 

III. Conclusion

 The judgment of the trial court is reversed and the case is remanded for further
proceedings consistent with this opinion.

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Publish. Tex. R. App. P. 47.2(b)

Opinion delivered and filed 

this the 26th day of August, 2009. 
1. In the reporter's record, the State cites section 545.048 of the transportation code. However, that
section does not exist. We believe that the State meant section 545.058, which provides that an "operator
may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is
necessary and may be done safely" but only under a limited number of circumstances. See Tex. Transp.
Code Ann. § 545.058(a) (Vernon 1999).
2. We note that Trooper Harkins never testified as to whether he perceived a violation of the
transportation code. Out of an abundance of caution, we, in our discretion, will nevertheless entertain the
State's argument.
3. We note that Trooper Harkins never testified that, in observing Scardino's driving, he suspected
Scardino was intoxicated and the State did not posit such an argument as a basis for reasonable suspicion. 
Because neither Trooper Harkins nor the State posited intoxication as a basis for reasonable suspicion, we
will not analyze that issue. Cf. Curtis v. State, 328 S.W.3d 376, 377-78 (Tex. Crim. App. 2007) (analyzing,
in an appeal dealing with suppression of evidence of driving while intoxicated, only the grounds for reasonable
suspicion that were raised by the State before the trial court and brought on appeal).