COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-388-CR

 

 

SAMUEL CENDEJAS FERNANDEZ                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY
CRIMINAL COURT NO. 6 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

In two related issues, appellant Samuel Cendejas
Fernandez appeals his conviction for driving while intoxicated (DWI),[1]
contending that the police did not have reasonable suspicion to stop his
pickup.  We affirm.








Background Facts

A few minutes after two o=clock on
the morning of September 14, 2007, on Camp Bowie Boulevard, Fort Worth Police
Officer Kenneth Simmons heard Fernandez=s black
pickup loudly squeal its tires and saw light smoke coming from the tires as the
pickup fishtailed about two feet outside of its lane of traffic.  Because he concluded that Fernandez was
traveling without control and unsafely, Officer Simmons immediately went to his
own car, drove behind Fernandez=s
pickup, and initiated a traffic stop. 
The traffic stop led to the State=s
charging Fernandez with DWI. 

Fernandez filed several pretrial motions,
including a motion to suppress all evidence obtained following the police=s stop
of his pickup because the police allegedly made the stop without a search
warrant or any reasonable suspicion of criminal activity.  The trial court denied Fernandez=s motion
to suppress, and then Fernandez entered an open plea of nolo contendere,
received a sentence of thirty days=
confinement and a $750 fine, and filed his notice of appeal.  The State asked the trial court to enter
findings of fact and conclusions of law related to the suppression issue, and
the trial court did so by adopting the State=s
suggested findings and conclusions.

 








The Legality of Fernandez=s
Detention

In his first issue, Fernandez argues that the
trial court erred by denying his motion to suppress and finding that Officer
Simmons had reasonable suspicion to pull him over and detain him for, among
other offenses, reckless driving.

Standard of review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court=s ruling, supports those fact
findings.  Kelly, 204 S.W.3d at
818B19. We
then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling. Id. at 819.  We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).  








Applicable law and analysis

AAn officer must have probable
cause to stop a vehicle and arrest the driver for a traffic violation without a
warrant.@  State v. Ballman, 157 S.W.3d 65, 70
(Tex. App.CFort Worth 2004, pet. ref=d); see
State v. Ballard, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999).  Alternatively, an officer may stop and detain
a driver, rather than arrest the driver, on reasonable suspicion of criminal
activity.  Tex. Dep=t of
Public Safety v. Gilfeather, 293 S.W.3d 875, 879B80 (Tex.
App.CFort
Worth 2009, no pet.) (en banc op. on reh=g)
(holding that an officer=s stop of a car was justified
because the officer reasonably suspected the offense of speeding); Fowler v.
State, 266 S.W.3d 498, 502 (Tex. App.CFort Worth
2008, pet. ref=d) (en banc); see Terry v.
Ohio, 392 U.S. 1, 20B22, 88 S. Ct. 1868, 1879B80
(1968); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); Carmouche
v. State, 10 S.W.3d 323, 328B29 (Tex.
Crim. App. 2000); Bracken v. State, 282 S.W.3d 94, 97B99 (Tex.
App.CFort
Worth 2009, pet. ref'd).  Reasonable
suspicion exists when, based on the totality of the circumstances, the officer
has specific, articulable facts that when combined with rational inferences
from those facts, would lead him to reasonably conclude that a particular
person is, has been, or soon will be engaged in criminal activity.  Ford, 158 S.W.3d at 492.  








Reasonable suspicion is an objective standard
that disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.  Id. 
In other words, Athe fact that the officer does
not have the state of mind which is hypothecated by the reasons which provide
the legal justification for the officer=s action
does not invalidate the action taken as long as the circumstances, viewed
objectively, justify that action.@  Garcia v. State, 827 S.W.2d 937, 942
n.5 (Tex. Crim. App. 1992) (quoting Scott v. United States, 436 U.S.
128, 138, 98 S. Ct. 1717, 1723 (1978)); see also State v. Patterson, 291
S.W.3d 121, 123 (Tex. App.CAmarillo
2009, no pet.) (explaining that the Asubjective
reasons uttered by the officer to legitimize the stop have no bearing on the
outcome if the totality of the circumstances nonetheless would lead a police
officer to reasonably suspect that crime is afoot@).  








AIt is well settled that a
traffic violation committed in an officer=s
presence authorizes an initial stop.@  Armitage v. State, 637 S.W.2d 936, 939
(Tex. Crim. App. [Panel Op.] 1982); see Walter v. State, 28 S.W.3d 538,
542 (Tex. Crim. App. 2000).  The State Ais not
required to show a traffic offense was actually committed, but only that the
officer reasonably believed a violation was in progress.@  Tex. Dep=t of
Pub. Safety v. Fisher, 56 S.W.3d 159, 163 (Tex. App.CDallas
2001, no pet.); see Tex. Dep=t of
Pub. Safety v. Axt, 292 S.W.3d 736, 739 (Tex. App.CFort
Worth 2009, no pet.).

One of the trial court=s
conclusions of law states that Officer Simmons had reasonable suspicion that
Fernandez had committed the traffic offense of reckless driving.  A person commits that offense when the person
drives a vehicle in willful or wanton disregard for the safety of persons or
property.  Tex. Transp. Code Ann. ' 545.401(a)
(Vernon 1999).  AIn the
context of reckless driving, >willful
and wanton disregard= means the >deliberate
and conscious indifference to the safety of others.=@  Brown v. State, 183 S.W.3d 728, 733
(Tex. App.CHouston [1st Dist.] 2005, pet.
ref=d).
Obviously, A[p]roof of an evil or malicious
intent is not an element of reckless driving.@  White v. State,  647 S.W.2d 751, 753 (Tex. App.CFort
Worth 1983, pet. ref=d).  The trial court adopted the following
findings of fact that support its reckless driving conclusion:

C       AOfficer Simmons saw
[Fernandez=s] vehicle rapidly
accelerate in speed, causing the vehicle to fishtail and the tires to cross
over the divider lane approximately two feet@;

 

C       AOfficer Simmons heard
[Fernandez=s] vehicle make a loud
screech and observed smoke coming from the tires as a result of the tires
squealing@;

 








C       AAt the time of the
offense, there was other traffic traveling on Camp Bowie . . .[,] and
[Fernandez] could have possibly wrecked into somebody when his car crossed over
into other lanes of traffic@; and

 

C       AOfficer Simmons described
the driving behavior as unsafe and typical of someone who is not in control of
their vehicle.@

 








The record, when viewed in the light most
favorable to the court=s ruling, supports these
findings.  See Wiede, 214
S.W.3d at 24; Kelly, 204 S.W.3d at 818B19.  Fernandez argues (and the dissenting opinion
asserts), however, that the testimony does not identify vehicles alongside, nor
in proximity to him when he fishtailed and that the facts therefore still do
not amount to reasonable suspicion of reckless driving.  But Officer Simmons testified that there was
other traffic on the same street as Fernandez when he went into more than one
lane of traffic, that Fernandez put other drivers in Adanger@ because
he Acould
have possibly wrecked,@ and, most importantly, that
there were Amaybe three@ cars immediately
in the vicinity of Fernandez=s
pickup.[2]  Fort Worth Police Officer Steven Pelton, who
was patrolling Camp Bowie Boulevard on the morning of Fernandez=s
arrest, also saw Fernandez=s pickup
peeling out and heard its tires squealing, and he also believed that Fernandez
was operating the pickup unsafely. 








While part of the record indicates that there
were no cars in the specific lane of traffic that Fernandez fishtailed into at
the precise time that he did so,[3]
we agree with the State that the language of the reckless driving statute does
not require actions that caused a wreck or nearly caused a wreck.  See, e.g., Jiron v. State, No. 05‑08‑00056‑CR,
2009 WL 866213, at *3 (Tex. App.CDallas
Apr. 2, 2009, no pet.) (not designated for publication) (holding that an
officer had reasonable suspicion for a traffic stop when the defendant=s car
spun its tires while accelerating through an intersection, moved side to side
through the intersection, and Acould
have damaged other vehicles or property or injured a person in the area@); Moore
v. State, No. 14‑02‑00388‑CR, 2003 WL 1087997, at *1B2 (Tex.
App.CHouston
[14th Dist.] Mar. 13, 2003, no pet.) (mem. op., not designated for publication)
(upholding the denial of a motion to suppress and concluding that law enforcement
had reasonable suspicion of reckless driving when a car drove at a high rate of
speed into a parking lot where people were standing, causing bystanders to step
up onto the sidewalk, and then quickly left the parking lot while squealing its
tires). Thus, Officer Simmons could have reasonably suspected that
Fernandez drove his pickup with willful or wanton disregard for others=
safety.  See Tex. Transp. Code
Ann. ' 545.401(a).  













The dissenting opinion=s
expression that an officer cannot stop a car based on reasonable suspicion of a
moving traffic violation[4]
contravenes recent binding precedent.  See Gilfeather, 293 S.W.3d at 879; Bracken,
282 S.W.3d at 97B99; see also Strauss v. State,
121 S.W.3d 486, 490 (Tex. App.CAmarillo
2003, pet. ref=d) (AIt is
clear that an officer who witnesses a traffic violation has sufficient
authority to stop the vehicle.@); McQuarters
v. State, 58 S.W.3d 250, 255 (Tex. App.CFort
Worth 2001, pet. ref=d).
Also, the dissenting opinion=s
implication that Officer Simmons needed an 
investigatory reason to stop Fernandez is incorrect; an officer is
justified to stop a driver and arrest him or issue a ticket to him when the
officer actually sees a traffic violation because that may be sufficient
probable cause.  See Tex. Transp.
Code Ann. ' 543.001 (Vernon 1999);
Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005); Azeez v. State,
248 S.W.3d 182, 189B90 (Tex. Crim. App. 2008); State
v. Gray, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005). And even if a
purely investigative reason for Officer Simmons=s stop
had been required and Officer Simmons could not have stopped Fernandez simply
with the goal of issuing a citation or making an arrest, the dissent=s broad
statement that reckless driving is Anot a
circumstance that can be clarified by . . . further investigation@[5] is not
true; an officer may have questions stemming from what he just witnessed, such
as whether something was wrong with the driver, the driver=s car,
or the car=s tires that caused the apparent
reckless driving. Such questions could assist the officer in investigating
reckless driving Cand not merely describe Aa
community caretaking function@[6]Csince as
even the dissenting opinion recognizes, reckless driving requires Adeliberate@ or Aconscious@
indifference to others= safety.  See Dissenting Op. at 22; Brown,
183 S.W.3d at 733.  Thus,
there could be as many reasons to investigate reckless driving, and to
ensure that an officer had seen an actual offense, as there are for any other
crime.

Fernandez principally relies on the Austin Court
of Appeals=s opinion in  State v. Guzman to support his
argument that Officer Simmons did not have reasonable suspicion for stopping
his pickup.  240 S.W.3d 362 (Tex. App.CAustin
2007, pet. ref=d).  In Guzman, the defendant had spun his
tires, and after the police officer saw smoke coming from the tires, he
immediately pulled Guzman over for Aexhibition
of acceleration.@ 
Id. at 365.  The Austin
court held that at the time of Guzman=s
conduct, there was no exhibition of acceleration offense, and it also held that
Guzman=s
conduct could not have created reasonable suspicion of speeding or DWI.  Id. at 366B368.  The court did not address whether Guzman=s
conduct could have qualified as reckless driving, and even if it had, the
circumstances in Guzman are factually distinct from the facts here
because Guzman did not fishtail into another lane of traffic with cars in his
immediate vicinity.    








For all of these reasons, we hold that the trial
court did not err by concluding that Officer Simmons had reasonable suspicion
that Fernandez committed reckless driving, and we overrule a portion of
Fernandez=s first issue on that basis.[7]  Because we hold that the trial court did not
err by concluding that the stop of Fernandez=s pickup
was justified on the reckless driving basis, we will not address whether
Officer Simmons also had reasonable suspicion of his racing, DWI, or violating
a city noise ordinance.[8]  See Tex. R. App. P. 47.1; Rotenberry
v. State, 245 S.W.3d 583, 589 (Tex. App.CFort
Worth 2007, pet. ref=d).  Thus, we also overrule the remainder of
Fernandez=s first issue and his second
issue.    








Conclusion

Having overruled Fernandez=s
issues, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

 

 

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DAUPHINOT, J. filed a
dissenting opinion.

 

PUBLISH

 

DELIVERED:  February 11, 2010

 











 
 
 
 
 
 
 




 

                                                                                                                             

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-388-CR

 

 

SAMUEL
CENDEJAS FERNANDEZ                                           APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY CRIMINAL
COURT NO. 6 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

Because I do not read the record in the same way
as the majority, I would hold that the record does not support the trial court=s denial
of Appellant=s motion to suppress and reverse
the trial court=s ruling.  

I.  Background Facts








At about 2:15 a.m. on September 14, 2007, the two
police officers were interviewing another driving while intoxicated (DWI)
suspect at a 7-11 parking lot in the 9100 block of Camp Bowie Boulevard in Fort
Worth.[1]  The
officers=
testimony conflicts regarding exactly where Appellant began the driving that
drew their attention.  As I read the
record, they both heard the loud squeal of tires.  Officer Simmons heard the squeal and then
looked up to see Appellant=s truck
already on Camp Bowie Boulevard:  

Q.     Okay.  Once you heard this [squeal], did you also
observe the vehicle that was causing the noise?

 

A.     Yes,
ma=am.[2]

 

In response to the trial court=s
question, Officer Simmons testified that Appellant was at a traffic light when
he accelerated, causing the tires to squeal.[3]  Although there is no mention of it in the
offense report, and indeed no mention of it at any time prior to trial, even in
discussions with his sergeant, Officer Simmons announced for the first time at
trial that he observed the pickup Afishtailing@ during
the three seconds of acceleration.  








Sergeant Pelton testified that he saw Appellant=s pickup
Aexiting
a strip mall and they were peeling their tires, braking [sic] traction out on
the roadway.@[4]

Q.     Okay.  So you heard the actual squealing or
screeching of tires?

 

A.     Yes,
ma=am.

 

Q.     Did
you see anything or did you just hear it?

 

A.     I
just heard it.  I looked over, then I saw
theCI saw the pickup truck
exiting.[5]

 

Sergeant Pelton denied that he saw the pickup fishtailing and
explained that he did not include the fishtailing in his report because he Adidn=t get
that information at the scene.@[6]  








At the civil hearing regarding Appellant=s driver=s
license suspension (AALR hearing@),
Sergeant  Pelton testified that the
reason Appellant was pulled over was that Ait was
2:00 o=clock in
the morning, he was in front of a nightclub, and that he peeled out . . . .@[7]  There was no mention of fishtailing in the
offense report or at the ALR hearing. 
Indeed, there was no mention of fishtailing until the hearing on
Appellant=s motion to suppress.[8]

Sergeant 
Pelton admitted that he had no information A[o]ther
than the fact that he was peeling out in front of theCor
exiting the parking lot onto the roadway@[9] and
that Apeeling
out does not violate the Texas Transportation Code.@[10]  Sergeant 
Pelton also testified that contrary to his testimony at the ALR hearing,
the nearest bar was Aactually a couple blocks down.@[11]  He testified that he had relied on Google
Earth before trial to clarify where he had been in relation to the bar.  AActually,
I didn=t
witness him leaving the bar.  It was the
strip mall adjacent to the 7-Eleven that I was at.@[12]  Officer Simmons had earlier testified that
the nearest bar was about a mile away.[13]








When asked to confirm Officer Simmons=s
testimony that Appellant had been stopped at a traffic light, Sergeant Pelton
could not.  AThere
was a light there, but ICI couldn=t say
whether or not he was stopped at the light. 
I did see him exiting the parking lot. 
My focus went back to the person I was with.@[14]

Sergeant 
Pelton was able to testify that the squeal lasted Alike,
maybe, threeCthree seconds or so.@[15]  It occurred when the pickup was moving from
the parking lot to the roadway.  A[I]t
would have been in transition.@[16]  Sergeant 
Pelton explained that the lane Appellant pulled out into was lane two,
the lane adjacent to the parking lot.[17]  Again, he reiterated that squealing one=s tires
is not a traffic offense.[18]

There was also testimony that there were cars in
the parking lot that Sergeant Pelton believed Appellant had exited and
speculation that somebody could have been starting a car at the time Appellant
allegedly left the parking lot.[19]  

As to creating danger for other vehicles, again,
the testimony was speculative: 








Q.     And
if there had been cars there, he could have possibly hit them?

 

A.     Yes,
ma=am.[20]

 

II.  Findings of Fact and
Conclusions of Law

The trial court adopted the State=s
proposed findings of fact and conclusions of law in toto with no changes or
corrections.[21]  Among the conclusions of law were conclusions
that Officer Simmons had reasonable suspicion and probable cause to believe
that Appellant was violating the transportation code.  Specifically, the trial court concluded that
Officer Simmons had both reasonable suspicion and probable cause to believe
that Appellant was violating the reckless driving statute[22] and racing on the highway.[23]  These
conclusions are not supported by Officer Simmons=s
tentative testimony.

III.  Racing








Officer Simmons was the only witness who observed
Afishtailing.@  He claimed that Appellant=s tires
or tire crossed the divider line Aabout
maybe two feet.@[24] 
There is no video record of these events, and Officer Simmons testified
that he could not remember whether his vehicle was equipped with an in-car
video camera.  Officer Simmons believed
that peeling out was a violation of the transportation code prohibition against
Aacceleration
of speed, racing.@[25]  The
majority addresses only the reckless driving issue.  I believe the majority should also address
the racing issue because the officer mistakenly believed that Appellant had
violated that statute; because the trial court concluded as a matter of law
that Appellant had violated that statute, justifying his detention; and because
this conclusion, like the trial court=s
conclusion that the officer had reasonable suspicion and probable cause to
believe that Appellant was violating the reckless driving statute, is wrong,
leaving no valid basis for the stop or the denial of Appellant=s motion
to suppress.

This court has previously addressed the racing
statute issue under similar circumstances. 
In Throneberry v. State, Throneberry screeched his tires and
fishtailed as he pulled out of an alley.[26]  We stated, 








The evidence . . . shows that
Throneberry=s act of Afishtailing@ out of
the alley is a misdemeanor offense under section 545.420 of the transportation
code, which provides that A[a]
person may not participate in any manner in . . . an exhibition of vehicle
speed or acceleration.@ 
Though section 545.420 of the transportation code is entitled ARacing
on Highway,@ courts have rejected the narrow
interpretation that the statute only applies where a defendant is involved in
some sort of a speed competition with another vehicle.  This same line of cases also holds that such
offenses committed in an officer=s
presence or within his view create probable cause to arrest the defendant
without a warrant.  Officer Ferguson
testified that when he observed Throneberry=s
vehicle exit the alley at such a rate of speed as to cause the car to fishtail,
he believed it was a traffic violation. 
Accordingly, the jury could reasonably have believed that Throneberry
committed an offense in Ferguson=s presence
or within his view by fishtailing from the alley into the street.[27]

But, as our sister court in Austin has explained,
the racing statute has since been modified by the legislature: 

Prior to September 1, 2003,
transportation code section 545.420 provided that A[a] person may not participate in
any manner in:  . . . (5)
an exhibition of vehicle speed or acceleration or to make a vehicle speed
record.  @The State refers us to authority
holding that this prohibition was not limited to exhibitions of acceleration
connected to a speed competition.  See
Throneberry v. State, 109 S.W.3d 52, 57 (Tex. App.CFort Worth 2003, no pet.).  But as amended in 2003, section 545.420
provides that A[a] person may not participate in
any manner in:  . . . (5) in connection
with a drag race, an exhibition of vehicle speed or acceleration or to make a
vehicle speed record.@

 








The
State argues that the legislature did not intend this amendment to
decriminalize exhibitions of acceleration that are not connected to speed
competitions.  The best evidence of
legislative intent, however, is the language of the statute.  We may go behind the statutory text only if
it is ambiguous or if the application of the statute=s plain language would lead to an
absurd result that the legislature could not possibly have intended.  Section 545.420(a)(5), as it now reads and as
it read on the night Guzman was stopped, is unambiguous.  It plainly prohibits exhibitions of vehicle
speed or acceleration in connection with a drag race.  There is nothing absurd in reading the
statute as written.  The legislature may
have always intended that this subsection apply only to speed competitions, or
it may have come to believe that without this limitation, the statute was
subject to abuse because any increase of vehicle speed could be construed as an
exhibition of acceleration.

 

There
is no evidence that Guzman was operating his pickup truck Aover a common selected course, from
the same place to the same place, for the purpose of comparing the relative
speeds or power of acceleration of [his] vehicle . . . in a specified distance
or time.@ 
The trial court correctly concluded that the spinning motion of Guzman=s tire after the traffic light
turned green did not alone warrant Scherbek=s suspicion that Guzman was unlawfully exhibiting
acceleration in violation of section 545.420.[28]

 








Similarly, although the officers in the case
before us saw Appellant accelerate so quickly that his tires squealed, the
tires produced a light smoke, and, for the first time at trial, Officer Simmons
suddenly decided the vehicle fishtailed, there is no evidence that they
observed Appellant operating his vehicle Aover a common
selected course, from the same place to the same place, for the purpose of
comparing the relative speeds or power of acceleration of [his] vehicle . . .
in a specified distance or time.@[29]   There is no evidence that Appellant was in
competition with any other vehicle. 
Indeed, Officer Simmons was unable to testify that Appellant was racing
any other vehicle.[30]

Although the trial court found that Officer
Simmons believed that Appellant was committing the traffic offense of rapid
acceleration or racing,[31] and
the trial court concluded as a matter of law that Officer Simmons had
reasonable suspicion that Appellant was violating the racing statute,[32] the record does not support this finding and
conclusion.  Sergeant Pelton admitted
that Appellant was not stopped for violating a noise ordinance or for
fishtailing, but only for peeling out. 
Sergeant Pelton admitted that peeling out is not a violation of the
Texas Transportation Code.[33]  Officer Simmons did not observe a violation
of the racing statute. 








Although the majority is correct in stating that
an officer may lawfully detain a driver when he reasonably believes that the
driver has committed a traffic offense, AA trooper=s incorrect belief
that a motorist is in violation of state traffic laws is insufficient to
justify a vehicle stop.@[34]  Officer Simmons=s
incorrect belief that Appellant had violated section 545.420 did not justify
his stop of Appellant.  The majority
should have so held.

IV.  Reckless Driving

The majority justifies the stop by holding that
Officer Simmons had reasonable suspicion to believe that Appellant had violated
the reckless driving statute and was justified in stopping Appellant to
investigate whether he had, indeed, violated the statute.  The record contains general testimony about
the presence of other cars on Camp Bowie Boulevard at the time, but that
testimony was in relation to whether Appellant could have been racing another
car:  

Q.     Okay.  Could you tell me how many cars were
immediately in the vicinity?

 

A.     Wasn=t a lot of cars at that time.  It was a few cars, but I say maybe three.       

 

Q.     Okay.  Now, was [Appellant] C was C did he appear to be racing those three other vehicles?

 

A.     I don=t know.[35]








There was no testimony that any cars were near
enough to Appellant=s vehicle to have been affected
in any way by the three seconds of acceleration. Indeed, there was no evidence
that those cars were on the same side of the curbed, grassy median or even on
the roadway instead of in a parking lot. 
The majority speculates that the cars in the vicinity were actually on
the roadway and on the same side of the grassy median as Appellant.  There is no such evidence in the record.  Unless the City of Fort Worth were evacuated
or the street blockaded, there would always be cars somewhere on Camp Bowie
Boulevard.  








The majority does not, but should, take judicial
notice of the fact that Camp Bowie Boulevard is a major boulevard that is more
than ten miles long and is actually a segment of Highway 80 that, on its
western end,  merges into I-30 and then
into I-20.  We held more than fifty years
ago, in a case involving Highway 80, that we may take judicial notice of that
which Arelates
to boundaries and limits of counties within our jurisdiction, to the relation
or contiguity of one county to another, as well as to principal highways
and seats of county government.@[36]  AHighway
nomenclature and designations within the trial court=s
jurisdiction are matters of common knowledge and proper subjects for judicial
notice.@[37]  Courts Amay take
judicial notice of the location of cities, counties, boundaries, dimensions,
and distances, because geographical facts such as these are easily
ascertainable and capable of verifiable certainty.@[38]     Indeed, at the State=s
request, this court went so far as to take judicial notice of Mississippi law
in performing a sufficiency analysis, although there was never any proof of
Mississippi law at trial or any request that the trial court take judicial
notice.[39]  The officers relied on Google Earth, and
Sergeant Pelton testified that Google Earth showed what businesses were at the
location in question and where the nearest bar was located.  If the majority does not choose to take
judicial notice of those geographical facts, they should at least take a page
from Sergeant Pelton=s book and take a look at Google
Earth.  Camp Bowie Boulevard is a major
thoroughfare with multiple lanes on each side of a broad, curbed, mostly grassy
median.

As this court has explained, 








The Fourth Amendment protects
against unreasonable searches and seizures. 
To suppress evidence because of an alleged Fourth Amendment violation,
the defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  A
defendant satisfies this burden by establishing that a search or seizure
occurred without a warrant.  Once the
defendant has made this showing, the burden of proof shifts to the State, which
must then establish that the government agent conducted the search or seizure
pursuant to a warrant or that the agent acted reasonably.[40]

When Appellant showed that there was no warrant,
the presumption that the police acted properly was defeated, and the burden
shifted to the State.  In Fowler,
we addressed the question of whether merely failing to maintain a single lane
was a violation of the law or otherwise sufficient to justify the detention of
the driver.  Again, 

An officer=s reasonable suspicion of
an alleged traffic violation cannot be based on a mistaken understanding of traffic
laws.  And an officer=s honest but mistaken
understanding of the traffic law which prompted a stop is not an exception to
the reasonable suspicion requirement. 
Thus, Officer Knotts=s misunderstanding that section 545.060(a)
requires only crossing of the lane lineCregardless of whether it is unsafe or dangerous
to do soCwill not support a
reasonable suspicion.[41]

 








In Fowler, there was no evidence that the
driver=s
allowing the tires to cross the lane line constituted a danger to anyone
because there was no vehicle in the lane into which the tires crossed.  Unlike the officer=s in the
case now before this court, the officer in Fowler admitted that the
driving did not endanger anyone because there was no one there.  In this case, although Officer Simmons
admitted that Appellant=s driving caused no property
damage and did not endanger any pedestrian, and although he admitted that he
could not testify that Appellant was speeding, he claimed that Appellant
violated the reckless driving statute because Aif there
had been cars there, he could have possibly hit them.@[42]

The majority holds that Officer Simmons had
reasonable suspicion to believe that Appellant had committed the traffic
offense of reckless driving, as the trial court concluded as a matter of
law.  The majority confuses the reasoning
justifying a Terry stop with the law allowing an officer to detain a
person who commits an offense in the officer=s
presence.  Terry v. Ohio stands
for the rule that 








in dealing with the
rapidly unfolding and often dangerous situations on city streets the police are
in need of an escalating set of flexible responses, graduated in relation to
the amount of information they possess. 
For this purpose it is urged that distinctions should be made between a Astop@ and an Aarrest@ (or a Aseizure@ of a person), and
between a Afrisk@ and a Asearch.@  Thus, it is argued, the police should be
allowed to Astop@ a person and detain him
briefly for questioning upon suspicion that he may be connected with criminal
activity.  Upon suspicion that the person
may be armed, the police should have the power to Afrisk@ him for weapons.  If the Astop@ and the Afrisk@ give rise to probable cause to believe that the
suspect has committed a crime, then the police should be empowered to make a
formal Aarrest,@ and a full incident Asearch@ of the person.  This scheme is justified in part upon the
notion that a Astop@ and a Afrisk@ amount to a mere Aminor inconvenience and
petty indignity,@ which can properly be
imposed upon the citizen in the interest of effective law enforcement on the
basis of a police officer=s suspicion.[43]

 

That is, A[i]f police have a reasonable
suspicion, grounded in specific and articulable facts, that a person they
encounter was involved in or is wanted in connection with@ criminal
activity, they may Ainvestigate
that suspicion@ by
making Aa stop to check identification,
to pose questions to the person, or to detain the person briefly while
attempting to obtain further information.@[44]  








The police may seek further information regarding
the suspicious activity.  If the police
see someone loitering near a broken window of a closed business, the police may
investigate the possibility of a burglary. 
If the police see someone that they believe to be too young to lawfully
operate a vehicle, they may stop the driver to ascertain his age.  But the police may not detain the driver to
investigate whether he might have participated in a burglary somewhere at some
time.  An officer may not detain the
suspicious loiterer to determine whether he ever operated a motor vehicle when
he was too young to be issued a driver=s
license.  The purpose of the
investigation at its inception must be to obtain further information regarding
the suspicion justifying the warrantless detention.








The majority is correct that an officer may stop
a vehicle if he reasonably suspects the driver has committed, is committing, or
soon will commit an offense. 
Additionally, the detention is not unlawful if, after investigation, the
officer concludes the driver did not commit that offense.  But the officer must reasonably suspect
criminal activity that can be ascertained with further investigation.  That is, when an officer suspects speeding or
failure to signal a turn, nothing more can be learned from further
investigation.  The officer either saw
it, or he did not.  Of course, there are
traffic offenses that can be determined by further investigation, such as
learning whether the driver is too young to lawfully operate a vehicle.   Also, the officer may reasonably suspect an
expired inspection sticker or license plate or that the window-tinting exceeds
lawful limits, detain the driver and vehicle for further investigation, learn
that he is wrong but view contraband in plain view inside the vehicle or
determine that the driver is intoxicated, and the stop will not be held to be
unlawful because the officer did not view a traffic offense.  But the detention must be justified at its inception,
and the search or seizure must be reasonably related to the circumstances that
justified the stop.  Whether a driver was
speeding, failed to signal a turn, or drove recklessly is not a circumstance
that can be clarified by detention and further investigation.

The Fifth Circuit instructs us regarding traffic
stops:

[W]e analyze the legality of
traffic stops for Fourth Amendment purposes under the standard articulated in Terry
v. Ohio.  This standard is a
two-tiered reasonable suspicion inquiry: 1) whether the officer=s action was justified at its
inception, and 2) whether the search or seizure was reasonably related in scope
to the circumstances that justified the stop in the first place.  In addition, Athe investigative methods employed
should be the least intrusive means reasonably available to verify or dispel
the officer=s suspicion in a short period of
time.@

 

However,
once an officer=s suspicions have been verified or
dispelled, the detention must end unless there is additional articulable,
reasonable suspicion.  AAt that point, continuation of the
detention is no longer supported by the facts that justified its initiation.@[45] 

 

Here, the majority, consistent with Officer
Simmons=s
testimony, states  that Officer Simmons
stopped Appellant because he suspected that Appellant might have committed a
traffic offense and wanted to investigate his reasonable suspicion that
Appellant might have committed a traffic offense.  Frankly, I don=t
understand how this reasoning comports with the law.  As the Supreme Court pointed out,








        Once Knowles was stopped for speeding and
issued a citation, all the evidence necessary to prosecute that offense had
been obtained. No further evidence of excessive speed was going to be found
either on the person of the offender or in the passenger compartment of the
car.[46]

 

Officer Simmons suspected that Appellant was
either driving recklessly or was racing. 
No investigation after detaining the vehicle would provide more evidence
of reckless driving or racing.  Simmons
did not testify that he reasonably suspected that Appellant was
intoxicated.  The majority speculates that
Officer Simmons may have had questions stemming from what he had just witnessed,
such as whether something was wrong with the driver, the driver=s car,
or the car=s tires that caused the apparent
reckless driving.  That is, the majority
speculates that Officer Simmons could have been combining a community
caretaking function with a criminal investigation function.  Of course, this would be improper.  Community caretaking must be totally divorced
from gathering evidence of a criminal act.[47]  There was no evidence to preserve, and there
was no need to detain Appellant to search for weapons. Under these
circumstances, the detention was not justified. 








Cobbling together disparate rules to justify the
detention, the majority relies on Terry to hold that reasonable
suspicion justifies a stop to gather more information about the suspected
offense but applies the rule to a traffic offense that is not susceptible of
further investigation.[48]  This approach leads to a result not justified
by case law or either the state or the federal constitution.








The majority holds that Appellant may have
violated the reckless driving statute. 
As the majority correctly states, AThere
were no cars in the specific lane of traffic that [Appellant] fishtailed into
at the precise time that he did so.@[49]  But a close reading of the record also shows
that there is no evidence of another vehicle, pedestrian, property, or animal
near Appellant=s vehicle during the three
seconds of acceleration.  Indeed, as
stated earlier, the two police officers were not in agreement regarding exactly
where Appellant began the driving that drew their attention.  They both heard the loud squeal of tires.[50] 
Officer Simmons believed that Appellant was at a traffic light.[51] Sergeant Pelton believed that Appellant=s
vehicle was leaving a strip mall parking lot.[52]  If Appellant was indeed pulling out of a
parking lot, what Officer Simmons believed was fishtailing could have been
nothing more than the natural movement of a vehicle turning right out of a
parking lot into the adjacent lane.     Sergeant 
Pelton observed a turn but no fishtailing.  Clearly, it was up to the trial court to
decide which officer to believe.  But
even if Officer Simmons=s testimony were believed in its
entirety, he nevertheless did not testify to any actual traffic violationConly the
suspicion of a violation based on a misunderstanding of the law.  Sergeant Pelton did not agree that Officer
Simmons should have pulled Appellant over. 
Sergeant Pelton testified that the traffic stop was premature and that
he would have followed Appellant to watch his driving.[53]  

There was vague testimony that there were other
cars on Camp Bowie Boulevard at the time, but there was no clear testimony that
there were cars near enough to Appellant=s
vehicle to be endangered.  There was
testimony that there were cars in the parking lot that Officer Pelton believed
Appellant had left and speculation that somebody could have been starting a car
at the time Appellant left the parking lot.[54]  Given the question posed to Officer Simmons,








Q.     And
if there had been cars there, he could have possibly hit        them?

 

A.     Yes, ma=am[,][55]

 

the only logical inference from the evidence is that the vehicles were
not near enough to Appellant to be affected by the fishtailing.  There was testimony that no vehicle was in
the adjacent lane.








Section 545.401 of the transportation code, the
reckless driving statute, provides, AA person
commits an offense if the person drives a vehicle in wilful or wanton disregard
for the safety of persons or property.@[56]  As our sister court in Houston has pointed
out,  AIn the
context of reckless driving, >willful
and wanton disregard= means the >deliberate
and conscious indifference to the safety of others.=@[57]  By its very language, the statute requires
that there be persons or property near enough to the person=s
vehicle to have their safety disregarded. 
A person speeding on I-35 does not do so in wilful or wanton disregard
for the safety of persons driving on I-95. 
A person spinning donuts on an ice-covered parking lot at Texas
Christian University does not do so in wilful or wanton disregard for the
safety of persons driving down Congress Avenue in Austin.  A person peeling out on Camp Bowie Boulevard
does not constitute a threat to persons or property on the far side of the wide
grassy median or in any area other than the immediate vicinity of the vehicle.

We must remember that the burden to justify a
warrantless detention rests squarely on the State.  The State must present evidence to prove, not
that there is some circumstance in which the detention could have been lawful,
but that the detention actually was lawful. 
The burden was not on Appellant to negate every possible scenario that
would justify the detention.  Officer
Simmons thought he had observed a traffic violation, but he was wrong. 








I
agree with Officer Pelton:  Officer
Simmons stopped Appellant prematurely and needed more than he observed to
justify Appellant=s detention.  Because the majority holds that (1) the stop
was lawful because Simmons reasonably suspected that Appellant might have
committed a traffic offense that needed to be investigated when there was
nothing to investigate by a detention, (2) it is not necessary for property or
persons to be near enough for their safety to be at risk for a driver to
violate the reckless driving statute, (3) that merely allowing your tires to
cross a lane line when no other car is near enough to be placed in danger is a
violation of the law, and (4) that three seconds of screeching tires and
fishtailing absent evidence of traffic, 
pedestrians, animals, or property that could have been put at risk is
sufficient to show reckless driving, I must respectfully dissent. 

 

 

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

 

DELIVERED:  February 11, 2010     











[1]See Tex. Penal Code Ann. ' 49.04(a) (Vernon
2003).





[2]Any relevance of the
dissenting opinion=s inclusion of
beyond-the-record details concerning the length of Camp Bowie Boulevard is
negated by Officer Simmons=s testimony that three vehicles were in Fernandez=s immediate vicinity when
he peeled out.  See Dissenting Op.
at 12B13.  Officer Simmons=s testimony in that
regard also belies the dissenting opinion=s statements that there is Ano evidence of another
vehicle . . . near Appellant=s vehicle during the three seconds of
acceleration.@  Id. at 20.  The dissenting opinion=s attempt to guess that
Fernandez=s car might have been
traveling the opposite direction and across a broad grassy median on Camp Bowie
Boulevard from the other cars on the boulevard reconstructs the phrase Aimmediate vicinity@ and is unsupported by
the record.  And contrary to the
dissenting opinion=s statement, we are not
speculating at all about the positioning of cars in relation to Fernandez=s car; we are simply
viewing the Aimmediate vicinity@ testimony in the light
most favorable to the trial court=s ruling, as we are constrained by binding
precedent to do.  See id.
at 12; Wiede, 214 S.W.3d at 24.  





[3]The State=s prosecutor asked
Officer Simmons:

 

Q.     Okay.  So he did go into
other lanes of traffic?

 

A.     Yes, ma=am.

 

Q.     And if there had been cars there, he could have possibly hit
them?

 

A.     Yes ma=am.





[4]See Dissenting Op. at 13B19. 





[5]Dissenting Op. at 18.





[6]See Dissenting Op. at 19.





[7]We clearly do not hold,
as the dissenting opinion says that we do, that Ait is not necessary for
property or persons to be near enough for their safety to be at risk for a
driver to violate the reckless driving statute@ or that Amerely allowing your
tires to cross a lane line when no other car is near enough to be placed in
danger is a violation of the law.@ 
Dissenting Op. at 23.  We hold
only that, viewing the testimony in the light most favorable to the trial court=s ruling, Fernandez=s fishtailing into
another lane of traffic with cars in the immediate vicinity meets the
requirements for a detention for reckless driving under the transportation
code.





[8]We should avoid issuing
advisory opinions on issues that do not affect the disposition of a case.  See Ferrell v. State, 968 S.W.2d 471,
474 (Tex. App.CFort Worth 1998, pet. ref=d).  Thus, we will not address the dissenting
opinion=s lengthy analysis of
whether the facts could justify reasonable suspicion of racing under the
transportation code.  See
Dissenting Op. at 6B11. 





[1]II R.R. at 5.





[2]Id. at 6.





[3]Id. at 21.





[4]Id. at 23.





[5]Id. at 24.





[6]Id. at 28.





[7]Id. at 28B29.





[8]Id. at 29.





[9]Id.





[10]Id.





[11]Id. at 30.





[12]Id.





[13]Id. at 9B10.





[14]Id.





[15]Id. at 31.





[16]Id. at 33.





[17]Id. at 34.





[18]Id.





[19]Id. at 8, 26.





[20]Id. at 8B9.





[21]C.R. at 152B58.





[22]See Tex. Transp. Code Ann. ' 545.401(a) (Vernon
1999).





[23]See id. ' 545.420 (Vernon
Supp. 2009).





[24]II R.R. at 12.





[25]Id. at 11.





[26]109 S.W.3d 52, 57B58 (Tex. App.CFort Worth 2003, no
pet.).





[27]Id. (citations omitted).





[28]State v. Guzman, 240 S.W.3d 362, 366B67 (Tex. App.CAustin 2007, pet. ref=d) (selected citations
and footnotes omitted).





[29]Tex. Transp. Code Ann. ' 545.420(b)(1)(B)
(defining Adrag race@).





[30]II R.R. at 11.





[31]C.R. at 153.





[32]Id. at 155.





[33]II R.R. at 29.





[34]United States v. Granado, 302 F.3d 421, 423 (5th
Cir. 2002), superseded on other grounds by statute as stated in United
States v. Contrera-Trevino, 448 F.3d 821, 823 (5th Cir.), cert. denied,
549 U.S. 981 (2006); see
also United States v. Lopez‑Valdez, 178 F.3d 282, 288 (5th Cir. 1999).





[35]II R.R. at 11.





[36]Fairall v. Sutphen, 296 S.W.2d 309, 311
(Tex. Civ. App.CFort Worth 1956, no
writ); see also Tex. R. Evid. 201. 





[37]Apostolic Church v. Am.
Honda Motor Co., 833 S.W.2d 553, 555 (Tex. App.CTyler 1992, writ denied).





[38]1.70 Acres v. State, 935 S.W.2d 480,
489 (Tex. App.CBeaumont 1996, no writ); see
also Butts Retail, Inc. v. Diversifoods, Inc., 840 S.W.2d 770, 774
(Tex. App.CBeaumont 1992, writ denied). 





[39]See Tate v. State, 120 S.W.3d 886, 889
(Tex. App.CFort Worth 2003, no
pet.).





[40]Fowler v. State, 266 S.W.3d 498, 501B02 (Tex. AppCFort Worth 2009, pet. ref=d) (citations omitted).





[41]Id. at 504B05 (citations omitted).





[42]II R.R. at 9.





[43]392 U.S. 1, 10B11, 88 S. Ct. 1868, 1874
(1968) (footnotes omitted).





[44]United States v. Hensley, 469 U.S. 221, 229, 232,
105 S. Ct. 675, 680, 682 (1985) (emphasis added) (citation omitted).





[45]United States v. Valadez, 267 F.3d 395, 397B98 (5th Cir. 2001)
(citations omitted).





[46]Knowles v. Iowa, 525 U.S. 113, 118, 119
S. Ct. 484, 488 (1998) (citations omitted).





[47]Corbin v. State, 85 S.W.3d 272,
276 (Tex. Crim. App. 2002).





[48]See Terry, 392 U.S. at 10B11, 88 S. Ct. at 1874.





[49]Majority op. at 9.





[50]II R.R. at 5.





[51]Id. at 21.





[52]Id. at 23.





[53]Id. at 25, 28, 35.





[54]Id. at 8, 26.





[55]Id. at 9.





[56]Tex. Transp. Code Ann. ' 545.401(a) (Vernon
1999).





[57]Brown v. State, 183 S.W.3d 728, 733
(Tex. App.CHouston [1st Dist.] 2005,
pet. ref=d).