In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00476-CR
_____

SAM ELLIS ALLEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-05-05642 CR

**MEMORANDUM OPINION**

Appellant Sam Ellis Allen was stopped for failure to safely change lanes while driving on Interstate 45 North in Montgomery County. During the stop, the detaining officer smelled "a strong odor of marijuana" coming from Allen's vehicle. When the officer asked about the odor, the passenger in the front seat of Allen's vehicle revealed that she had marijuana on her person. The officer then conducted a search of the vehicle and discovered approximately forty-eight pounds of marijuana in the trunk of the vehicle. Allen was arrested and charged with the

1

offense of possession of marijuana in an amount of fifty pounds or less, but more than five pounds. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(4) (West 2010). Allen filed a pretrial motion to suppress, seeking to exclude evidence stemming from the traffic stop. Following a hearing, the trial court denied the motion. Allen was later convicted by a jury of the charged offense, and the trial court, upon receiving Allen's pleas of "true" to three enhancement allegations, assessed punishment at forty years in the Texas Department of Criminal Justice, Institutional Division. In his sole issue on appeal, Allen challenges the trial court's denial of his motion to suppress, claiming that his initial detention by the arresting officer was not based on reasonable suspicion. We affirm.

## I.    Background

At the hearing on the motion to suppress, the trial court heard testimony from the arresting officer, a trooper with the Texas Department of Public Safety. The trooper testified that on the morning of May 22, 2012, he was patrolling on Interstate 45 North. At approximately 8:20 a.m., the trooper, who was traveling in the center lane of the interstate's three northbound lanes, observed a white Nissan traveling in the left northbound lane behind the trooper's patrol car. The Nissan continued to travel in the left lane and eventually passed the trooper's vehicle. According to the trooper, the Nissan was not exceeding the speed limit, did not

2

move outside its marked lane, and did not violate any other traffic laws as it passed the trooper's vehicle.

Shortly thereafter, the trooper moved his patrol car into the left lane behind the Nissan to avoid traffic. When he did so, the Nissan immediately activated its right-turn signal and, after a few moments, changed lanes into the center lane. The trooper testified that as the Nissan changed lanes, it "cut off" a red Dodge Charger that was traveling in the center lane, causing the Dodge to slow down to avoid the Nissan. The trooper explained that although he did not see the Dodge's brake lights come on, he saw the Dodge immediately slow down when the Nissan pulled into the center lane in front of it.

The trooper described the distance between the Nissan and the Dodge as "less than a car length" or "maybe less than a half a car length" at the time the Nissan moved into the center lane. According to the trooper, there was "not enough distance" between the two vehicles for the Nissan to perform a safe lane change under the circumstances. He testified that the driver of the Nissan needed "to give the driver [of the Dodge] more time to know that he [was] changing lanes" and that if the driver of the Nissan "were to apply his brakes or anything would have happened, the car behind him wouldn't have had enough time to react."

3

The trooper's patrol vehicle was equipped with a video camera that recorded the Nissan's movements at the time of the lane change. A copy of the video recording was admitted into evidence at the suppression hearing and played for the trial court. In the video, the Nissan can initially be seen traveling in the left lane of a three-lane highway, passing the trooper's patrol car. Shortly after the Nissan passes the trooper's vehicle, the trooper then changes lanes from the center lane into the left lane behind the Nissan. When the trooper enters the left lane, the Nissan immediately activates its right-turn signal. At this point in the video, a red Dodge Charger can be seen traveling in the center lane next to the Nissan. The Nissan continues to travel in the left lane for approximately six or seven seconds as it passes the Dodge. The Nissan then changes lanes into the center lane in front of the Dodge. From the angle of the video, it appears that the Nissan begins moving into the center lane in front of the Dodge shortly after passing the Dodge's front bumper. The Dodge's brake lights, which can be seen briefly in the video when the Nissan initiates the lane change, do not illuminate. However, the Dodge quickly falls back behind the Nissan and out of view of the video camera when the Nissan moves into the center lane. As the Dodge falls back, the distance between the Nissan and the Dodge appears to grow larger.

4

The trooper testified that after observing the Nissan change lanes in front of the Dodge, he activated his overhead lights and initiated a traffic stop. During the stop, the trooper identified Allen as the driver of the Nissan. The trooper testified that the sole basis for the stop was his belief that Allen had failed to change lanes in a safe manner in violation of section 545.060(a) of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011).

During his testimony, the trooper acknowledged that when the Nissan moved into the center lane in front of the Dodge, he did not hear the tires of the Dodge "squeal" and the Dodge did not have to change lanes to avoid the Nissan. He testified, however, that he specifically recalled seeing the Dodge immediately slow down within the center lane when the Nissan changed lanes in front of it and that he believed the Dodge had to take such action to avoid hitting the Nissan. Further, while the trooper agreed with defense counsel that the Nissan did not "almost strike" the Dodge as it made the lane change, he testified that it "came pretty close."

Following the trooper's testimony, defense counsel argued that the trooper lacked reasonable suspicion to initiate the traffic stop because he failed to present specific, articulable facts that Allen's lane change was unsafe. In response, the State argued that the trooper's testimony and the video recording from his patrol

5

unit established that Allen's lane change was not performed in a safe manner because they showed that Allen's vehicle was too close to the Dodge when the lane change occurred and that the Dodge had to slow down to avoid Allen's vehicle. At the conclusion of the suppression hearing, the trial court denied Allen's motion to suppress. Following his conviction by a jury for possession of marijuana, Allen timely filed this appeal. In one issue, Allen argues that the trial court erred in denying his motion to suppress because the trooper lacked reasonable suspicion to initiate the traffic stop.

## II.      Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). In reviewing the trial court's ruling, we do not engage in our own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial judge "'is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony[.]'" *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)). Accordingly, we give almost total deference to (1) the trial court's determination of historical facts that are supported by the record, and (2) the trial court's rulings on mixed questions of law and fact that turn on an evaluation of

6

credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). By contrast, when the trial court's rulings on mixed questions of law and fact do not turn on the credibility and demeanor of the witnesses, we apply a *de novo* standard of review. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); *Guzman*, 955 S.W.2d at 89. All purely legal questions are also reviewed *de novo*. *Gonzales*, 369 S.W.3d at 854.

The Texas Court of Criminal Appeals has held that as a general rule, a trial court's determination of historical facts is entitled to almost total deference, even when that determination is based on a videotape recording admitted into evidence at a suppression hearing. *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010); *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). Appellate courts are not, however, required to defer to fact findings made by the trial court when the videotape indisputably refutes testimony constituting the only evidence in the record that supports those fact findings. *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); *see also State v. Gobert*, 275 S.W.3d 888, 892 n. 13 (Tex. Crim. App. 2009); *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.).

In reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as in this case, the trial court does not issue findings of fact, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *See id.* at 819. We then review the trial court's legal ruling *de novo* unless the implied fact findings supported by the record are dispositive of the legal ruling. *Id*. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

### III. Discussion

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Ford v. State*, 158 S.W.3d 488, 492 (Tex.

8

Crim. App. 2005). Once the defendant has made this showing, the burden then shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. In this case, the State stipulated that the traffic stop was made without a warrant. Therefore, the burden was on the State to establish the reasonableness of the stop. *See id*.

A detention may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Carmouche*, 10 S.W.3d at 328. "An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Ford*, 158 S.W.3d at 492. "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). In determining whether an officer's suspicion was reasonable, we employ an objective standard, asking whether the facts available to the officer at the moment of the detention warrant a person of reasonable caution to believe that the action taken was appropriate. *Terry*, 392 U.S. at 21-22; *Aviles v. State*, 23 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We disregard the actual,

9

subjective intent of the detaining officer and look, instead, to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. In determining whether the officer had a reasonable suspicion for initiating the stop, we consider the totality of the circumstances. *Id*. at 492-93.

In this case, the trooper testified that the sole basis for the traffic stop was Allen's failure to change lanes in a safe manner in violation of section 545.060(a) of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 545.060(a). That section provides that "[a]n operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely." *Id*. Although section 545.060(a) contains two subparts, it creates only one offense—namely, moving out of a marked lane when it is not safe to do so. *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.—Austin 1998, pet. ref'd); *see also* Tex. Transp. Code Ann. § 545.060(a). Therefore, a violation of section 545.060(a) "occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely." *Hernandez*, 983 S.W.2d at 871; *see also Mahaffey v. State*, 316 S.W.3d 633, 640 n. 35 (Tex. Crim. App. 2010); Tex. Transp. Code Ann. § 545.060(a).

Allen does not dispute that he moved out of his marked lane of traffic to effectuate the lane change. Instead, Allen argues that the traffic stop in this case was not justified because the facts to which the trooper testified at the suppression hearing do not objectively show that Allen's lane change was unsafe. Allen also argues that the video recording from the trooper's dashboard camera establishes that Allen's lane change was not unsafe. He argues, therefore, that the trooper did not reasonably suspect Allen of violating section 545.060(a) and that the trial court abused its discretion in denying his motion to suppress. Allen relies on *Fowler v. State*, 266 S.W.3d 498 (Tex. App.—Fort Worth 2008, pet. ref'd), in support of his argument.

In *Fowler*, the detaining officer stopped the defendant's vehicle for failure to maintain a single lane of traffic. *Id*. at 499, 501. After initiating the traffic stop, the officer observed signs that the defendant was intoxicated and subsequently arrested the defendant for driving while intoxicated. *Id.* at 499-500. The defendant filed a motion to suppress, claiming that the officer lacked reasonable suspicion to initiate the traffic stop. *Id*. at 500. At the suppression hearing, the officer testified that he initiated the traffic stop after observing the defendant's truck cross into an adjacent same-direction lane by a tire's width and then drift within its own lane, touching the white line between the lanes on two occasions. *Id*. at 501. He testified that the

sole basis for the stop was the defendant's failure to maintain a single lane of traffic, which he believed was sufficient, by itself, to constitute a traffic violation. *Id*. The officer acknowledged that there was nothing dangerous about the movements of the defendant's vehicle when it crossed over the line into the adjacent lane and that there was no vehicle in the adjacent lane when the defendant's tires crossed the line. *Id*. At the conclusion of the hearing, the trial court denied the motion to suppress. *Id*. at 500.

The Fort Worth Court of Appeals reversed, concluding that the detaining officer did not have a reasonable suspicion that the defendant failed to maintain a single lane of traffic. *Id*. at 505. The court explained that although the specific facts articulated by the officer showed that two of the defendant's tires drifted into an adjacent, same-direction lane, there was no evidence that the defendant's failure to drive in a single lane was unsafe. *Id*. at 504. The court further concluded that the officer's misunderstanding of section 545.060(a)—*i.e*., that section 545.060(a) requires only crossing of the lane line, regardless of whether it is unsafe to do so—and his subjective belief that the defendant violated section 545.060(a) by merely failing to stay within his lane, were insufficient to give rise to a reasonable suspicion. *Id*. at 504-05.

The record before us presents facts that clearly distinguish this case from *Fowler*. Here, the trooper testified that when Allen changed lanes from the left lane into the center lane, his vehicle cut off the Dodge that was traveling in the center lane. He described the distance between Allen's vehicle and the Dodge as "less than a car length" or "maybe less than a half a car length" at the time the lane change occurred. According to the trooper, this was "not enough distance" between the two vehicles for Allen to safely change lanes because it did not give the driver of the Dodge sufficient time to react if Allen applied his brakes or if any other unforeseen event occurred. Further, when asked how the Dodge reacted to Allen's lane change, the trooper testified that the Dodge immediately slowed down to avoid Allen's vehicle. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that, unlike the officer in *Fowler*, the trooper in this case articulated specific facts that, when combined with reasonable inferences from those facts, showed he had an objectively reasonable basis for suspecting that Allen moved out of his marked lane of travel in a manner that was unsafe under the circumstances. *See, e.g., Dunn v. State*, No. 02-14-00059-CR, 2015 WL 2438119, *4 (Tex. App.—Fort Worth May 21, 2015, pet. filed) (affirming denial of motion to suppress where officer initiated the traffic stop based on violation of section 545.060(a) and the officer's testimony established that defendant drifted into

13

officer's lane, requiring the officer to slow down to avoid a collision, and that the defendant then drifted the other direction, topping the broken white line and prompting a driver in the adjacent lane to brake); *Wallace v. State*, No. 06-05-00126-CR, 2005 WL 3465515, *3 (Tex. App.—Texarkana Dec. 20, 2005, pet. dism'd) (mem. op., not designated for publication) (upholding denial of motion to suppress where officer stopped the defendant's vehicle for violation of section 545.060(a) and officer's testimony showed that the defendant changed lanes in front of another vehicle, forcing the other vehicle to brake or slow down, and describing the distance between the defendant's vehicle and the other vehicle as "'[p]robably a car length or less'" at the time of the lane change).

Allen also argues that the video recording from the trooper's dashboard camera, which he contends is "the purest available evidence of the stop[,]" establishes that Allen's lane change was performed in a safe manner. Specifically, Allen contends that, contrary to the trooper's testimony, the video shows that Allen's vehicle was more than a car length from the Dodge when the lane change occurred and that the Dodge never slowed down when Allen moved into the center lane.

In *Carmouche v. State*, the defendant filed a motion to suppress, arguing, among other things, that the detaining officer's second search of the defendant,

14

which ultimately led to the discovery of narcotics, was not justified. 10 S.W.3d at 327. At the suppression hearing, the detaining officer testified that the defendant had given him consent to conduct a second pat-down search. *Id*. However, the video from officer's patrol car camera, which captured the second pat-down, did not support the officer's testimony that the defendant consented to the search. *Id*. at 331-32. At the conclusion of the hearing, the trial court denied the defendant's motion to suppress. *Id*. at 327. The court of appeals affirmed, concluding that the trial court could have implicitly found that the defendant gave consent for the second search based on the officer's testimony at the suppression hearing. *Id*. The Court of Criminal Appeals, however, reversed. *Id*. at 333. The court noted that, in reviewing a trial court's ruling on a motion to suppress, an appellate court must generally give almost total deference to the trial court's determinations of historical fact that are supported by the record. *Id*. at 332 (quoting *Guzman*, 955 S.W.2d at 89). The court, however, concluded that "[i]n the unique circumstances of this case . . . we decline to give 'almost total deference' to the trial court's implicit findings under which the Court of Appeals found consent." *Id*. In reaching this conclusion, the court explained that "the nature of the evidence presented in the videotape does not pivot 'on an evaluation of credibility and demeanor[,]'" but instead "presents indisputable visual evidence contradicting essential portions of [the officer's]

15

testimony." *Id*. The court concluded that "[i]n these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because [the officer's] testimony may, by itself, be read to support" a finding of consent. *Id*.

We have reviewed the video of the lane change recorded by the video camera in the trooper's patrol car. Unlike the video in *Carmouche*, the video recording here does not present indisputable visual evidence contradicting essential portions of the trooper's testimony. *See id*. at 331-32. We must therefore defer to the trial court's implied findings, supported by the trooper's testimony, that Allen's vehicle was less than a car length or less than half a car length from the Dodge when the lane change occurred, and that the Dodge slowed down when Allen moved into the center lane. *See Montanez*, 195 S.W.3d at 109.

Based on the totality of the circumstances, we conclude that the record from the suppression hearing contains sufficient, articulable facts from which the trial court could have determined that the trooper's initial detention of Allen was objectively reasonable. We therefore conclude that the trial court did not err in denying Allen's motion to suppress. We overrule Allen's sole issue on appeal and affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 15, 2014
Opinion Delivered October 28, 2015
Do not publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.

17